USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-1619 UNITED STATES OF AMERICA, Appellee, v. CHARLES E. EMERY, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Morton A. Brody, U.S. District Judge] ___________________ __________________________ Before Selya, Circuit Judge, _____________ Friedman,* Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ __________________________ Robert A. Costantino for appellant. ____________________ Margaret D. McGaughey, Assistant United States Attorney, ______________________ with whom Richard S. Cohen, United States Attorney, and Raymond _________________ _______ C. Hurley, Assistant United States Attorney, were on brief, for __________ appellee. __________________________ April 28, 1993 ___________________________ ________________ *Of the Federal Circuit, sitting by designation. SELYA, Circuit Judge. This sentencing appeal presents SELYA, Circuit Judge. _____________ two issues for our determination.1 We must consider (1) whether an attempted escape from state custody prior to the initiation of a federal investigation into the offense of conviction can serve as a basis for enhancing a defendant's sentence under the obstruction-of-justice guideline, U.S.S.G. 3C1.1; and (2) whether the facts at bar justify a substantial upward departure from the guideline sentencing range (GSR). Finding both the enhancement and the departure to be lawful, we affirm. I. BACKGROUND I. BACKGROUND Defendant-appellant Charles E. Emery met Thomas H. Schmoock when the two men were serving overlapping sentences at the state penitentiary in Thomaston, Maine. Appellant was released in late April of 1991 and Schmoock went free a few weeks later. On May 28, 1991, the pair began executing a complex check-kiting scheme. In the scheme's preliminary stage, one of the culprits posed as an agent of the Internal Revenue Service (IRS) and solicited information from an unsuspecting dupe, one Thomas E. Mitchell. Emery and Schmoock used this information to procure a copy of Mitchell's birth certificate; they used the birth certificate to obtain a driver's license bearing Mitchell's name but Emery's photograph; and they used the license to open several ____________________ 1Except where otherwise indicated, all references are to the November, 1991 edition of the guidelines, which were in effect at the time of sentencing. See, e.g., United States v. Harotunian, ___ ____ _____________ __________ 920 F.2d 1040, 1041-42 (1st Cir. 1990). 2 checking accounts in Mitchell's name at federally insured banks in Maine and Massachusetts. In the scheme's second phase, Emery deposited a number of forged checks drawn on funds of Lisa and David Holt into the newly opened accounts.2 He and Schmoock then began kiting checks in escalating amounts among the three bogus Mitchell accounts. Fortunately, bank officials soon caught the scent. On June 6, 1991, officers of the Sanford, Maine police department arrested both men. They promptly attempted to escape from the county jail, but their escape attempt was no more successful than their check-kiting swindle. Although no federal investigation had been mounted to this point, one followed shortly. On November 21, 1991, a federal grand jury indicted appellant on a gallimaufry of charges. He pleaded guilty to impersonation of an IRS agent and bank fraud. See 18 U.S.C. 912, 1344 (1988 & Supp. II 1990). ___ At sentencing, the court set the base offense level (BOL) at six, see U.S.S.G. 2F1.1 (establishing BOL for bank fraud),3 raised ___ it seven levels because of the dollars in issue, see U.S.S.G. ___ 2F1.1(b)(1)(H) (providing for a seven-level increase if fraud involves $120,000 or more but less than $200,000), added two levels because the crime required more than minimal planning, see ___ ____________________ 2The checks, bearing the imprimatur of a New Hampshire bank, were blank when stolen from the Holts' home several days earlier. 3Because the impersonation count carried the same BOL, see ___ U.S.S.G. 2J1.4, it became irrelevant to establishing the offense level in this multiple-count case. See id. ___ ___ 2J1.4(c)(1). 3 U.S.S.G. 2F1.1(b)(2)(A), added two more levels for obstruction of justice, see U.S.S.G. 3C1.1, and subtracted two levels for ___ acceptance of responsibility, see U.S.S.G. 3E1.1. Appellant's ___ adjusted offense level was, therefore, fifteen. Under the guidelines, the GSR is determined by plotting the intersection of two lines: the adjusted offense level and the defendant's criminal history category (CHC). The CHC is measured in terms of assigned criminal history points; it ranges from I (for a person with fewer than two criminal history points) to VI (for a person with thirteen points or more). See U.S.S.G. ___ Ch.5, Pt.A (sentencing table). Appellant sported an extensive criminal history involving an assortment of violent felonies and, more recently, some less serious peccadillos. His score of twenty criminal history points surpassed the thirteen points needed to place him in CHC VI. The GSR was, therefore, forty-one to fifty- one months. See id. (offense level 15; CHC VI). ___ ___ Abjuring a sentence within the GSR the district judge departed upward, imposing an incarcerative sentence of seventy-two months. In this appeal, appellant bemoans both the obstruction- of-justice enhancement and the upward departure. We address each lamentation in turn. II. OBSTRUCTION OF JUSTICE II. OBSTRUCTION OF JUSTICE Appellant does not challenge the factual basis on which the district court found an obstruction of justice the probation officer's report, credited by the district court, made manifest appellant's attempt to escape from official custody 4 but, instead, posits that conduct otherwise sufficient to constitute an obstruction of justice under the federal sentencing guidelines an attempted escape is inoculated against such use if it occurs prior to the initiation of a federal investigation. _______ The government seeks to rebut this theorem in three ways. It avers that the appellant failed properly to preserve the point, that the decision to depart rendered the obstruction-of-justice enhancement moot, and that, in any event, the court below acted within its lawful authority in decreeing the enhancement. We elect to analyze the point in terms of the prosecution's last two rebuttal arguments.4 A. Mootness. A. Mootness. _________ We reject the government's asseveration that the upward departure renders the obstruction-of-justice adjustment moot. Had the district court eschewed the disputed adjustment, the GSR would have been thirty-three to forty-one months. See U.S.S.G. ___ Ch.5, Pt.A (sentencing table) (offense level 13; CHC VI). When an adjustment in the offense level increases the top end of the GSR, and an unguided upward departure ensues, the adjustment, at least potentially, has more than an academic effect on the actual ____________________ 4We waste no time in regard to the prosecution's attempt to conjure up a procedural default. Its reasoning in this respect is premised largely on an extemporaneous suggestion by the Assistant United States Attorney during the sentencing hearing to the effect that the federal probe might have started before the date of the attempted escape a comment which went unanswered by defense counsel. Having read the record carefully, we are convinced that the government's waiver claim cannot withstand the most mild scrutiny. Appellant fully preserved the "no ongoing federal investigation" point. 5 sentence because the proportionality of the departure to the GSR is a salient factor to be considered in judging the departure's reasonableness. See United States v. Ocasio, 914 F.2d 330, 337- ___ _____________ ______ 38 (1st Cir. 1990). Accordingly, we rule that a decision to depart does not, as a general rule, render moot questions concerning the appropriateness of the calculations underbracing the district court's computation of the GSR. See United States ___ _____________ v. Mondaine, 956 F.2d 939, 943 (10th Cir. 1992) (holding that a ________ district court's downward departure under section 4A1.3 did not moot the defendant's argument that he was entitled to a downward adjustment in the BOL). Consequently, the adjustment is zoetic, not moot; and the defendant has standing to protest it in this appeal.5 B. The Enhancement. B. The Enhancement. ________________ We turn now to the enhancement itself. We do so mindful that in cases where, as here, an objection to a guideline enhancement raises a pure question of law, appellate review is plenary. See United States v. St. Cyr, 977 F.2d 698, 701 (1st ___ _____________ _______ Cir. 1992); United States v. Bell, 953 F.2d 6, 7 (1st Cir. 1992). _____________ ____ We begin with the language of the relevant guideline. It requires sentencing courts to jack up a defendant's offense ____________________ 5We recognize, of course, that if the attempted escape from state custody could not furnish a legally cognizable basis for a section 3C1.1 adjustment, it might then furnish a springboard for departing upward. Nevertheless, we are unprepared to say, absent an express statement by the district court, that if appellant's legal argument foreclosed the two-level enhancement, the court would simply have compensated for its inability to ratchet up the offense level by boosting the ultimate departure sentence to a corresponding degree. 6 level if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. 3C1.1. The commentary to the guideline makes clear that "escaping or attempting to escape from custody before trial or sentencing" falls within the definition of obstructive or impeding conduct. U.S.S.G. 3C1.1, comment. (n.3(e)). The case law is in the same vein. See United States ___ _____________ v. Amos, 984 F.2d 1067, 1072 (10th Cir. 1993); United States v. ____ _____________ Melton, 970 F.2d 1328, 1335 (4th Cir. 1992). ______ The slightly more difficult task is defining when conduct can be said to have occurred "during the investigation . . . of the instant offense." Appellant theorizes that a suspect's conduct, no matter how deplorable, cannot obstruct a non-existent investigation, and that, therefore, if no federal probe has begun, there can be no obstruction within the guideline's reach. This argument has a certain superficial allure, especially because the inclusion of the term "the instant offense" in section 3C1.1 indicates that there must be some link ____ between the obstruction and the federal crime for which the affected defendant is to be sentenced. See generally United ___ _________ ______ States v. Yates, 973 F.2d 1, 4-5 (1st Cir. 1992). ______ _____ Be that as it may, several different reasons lead us to conclude that appellant's argument cannot prevail. In the first place, the guidelines should be read in a common-sense way. Doing so here strongly suggests that the provision may be 7 triggered if, notwithstanding the lack of an ongoing federal investigation, there is a close connection between the obstructive conduct and the offense of conviction. In this case, the connection is skin tight: the behavior underlying appellant's arrest by local gendarmes using false documents to open a series of bank accounts and withdraw funds to which he had no lawful claim is the very essence of the offense for which the district court sentenced him. Since appellant willfully sought to avoid the consequences of his felonious conduct, it would be passing strange to reward him merely because he managed to engineer his attempted escape just before the federal investigation formally began. We also believe it is important that appellant's escape attempt would likely have weighed against him in the pre- guidelines world. See, e.g., United States v. Fox, 889 F.2d 357, ___ ____ _____________ ___ 360-61 (1st Cir. 1989) (explaining that "relevant conduct," such as that occurring in the course of attempting to avoid detection or responsibility for an offense, is the sort of conduct "that courts typically took into account when sentencing prior to the Guidelines' enactment") (citation and internal quotation marks omitted); see also United States v. Wise, 976 F.2d 393, 398-99 ___ ____ _____________ ____ (8th Cir. 1992) (en banc), cert. denied, 113 S. Ct. 1592 (1993). _____ ______ We have often recognized that pre-guidelines precedent can have a definite role in resolving interpretive questions under the guidelines. See, e.g., United States v. Blanco, 888 F.2d 907, ___ ____ ______________ ______ 910 (1st Cir. 1989) (acknowledging that adjustment provisions 8 represent the Sentencing Commission's attempt to tie punishment to real, rather than charged, conduct, and indicate the Commission's recognition of the "desirability of emulating typical pre-Guidelines practice" in this respect). We think this principle has pertinence in the situation at hand: there is no reason to assume that the Sentencing Commission intended to supplant the long-settled praxis of awarding stiffer sentences to those who defy official custody. In the third place, the case law supports the district court's action. The Ninth Circuit has held squarely that obstructive conduct engaged in during an ongoing state investigation but prior to the formal initiation of a federal probe can form the basis of an enhancement under section 3C1.1. See United States v. Lato, 934 F.2d 1080, 1082-83 (9th Cir.), ___ _____________ ____ cert. denied, 112 S. Ct. 271 (1991). A number of other courts _____ ______ have apparently adopted this view sub silentio, upholding ___ ________ obstruction-of-justice enhancements despite the fact that only a state or local indagation was underway at the time of the enhancement-producing event. See, e.g., United States v. Dortch, ___ ____ _____________ ______ 923 F.2d 629, 632 (8th Cir. 1991); United States v. Rogers, 917 _____________ ______ F.2d 165, 168 (5th Cir. 1990) (per curiam), cert. denied, 111 S. _____ ______ Ct. 1318 (1991); United States v. Roberson, 872 F.2d 597, 609-10 _____________ ________ (5th Cir.), cert. denied, 493 U.S. 861 (1989). _____ ______ Finally, the commentary to the guidelines is hospitable to the conclusion that we reach today. It refers to attempting escape "from custody," misleading "a law enforcement officer" and 9 obstructing "an official investigation," U.S.S.G. 3C1.1, comment. (n.3), without any limitation to federal custody, _______ federal officers, or official federal investigations. We think _______ _______ that the Sentencing Commission's repeated employment of generic, all-encompassing terms is a telltale, indicating how section 3C1.1 should be construed. Cf. United States v. Fiore, 983 F.2d ___ _____________ _____ 1, 2 (1st Cir. 1992) (discussing degree of deference due to Sentencing Commission's view of a guideline provision), cert. _____ denied, S. Ct. (1993); United States v. Weston, 960 F.2d ______ ___ ___ _____________ ______ 212, 219 (1st Cir. 1992) (explaining that application notes and commentary "are important interpretive aids, entitled to considerable respect"). In sum, the obstruction-of-justice enhancement rests on the rationale that "a defendant who commits a crime and then . . . [makes] an unlawful attempt to avoid responsibility is more threatening to society and less deserving of leniency than a defendant who does not so defy" the criminal justice process. United States v. Dunnigan, 113 S. Ct. 1111, 1118 (1993). The ______________ ________ threat that a defendant poses is not lessened by the happenstance of fleeing state rather than federal custody, nor is the defendant's claim to leniency strengthened by that happenstance. Thus, consistent with the Dunnigan Court's rationale, the ________ Sentencing Commission's discernible intent, a traditionalist approach to sentencing, and the weight of authority, we hold that so long as some official investigation is underway at the time of ____ the obstructive conduct, the absence of a federal investigation _______ 10 is not an absolute bar to the imposition of a section 3C1.1 enhancement.6 The instant case falls comfortably within the zone in which such an enhancement is permissible. III. THE UPWARD DEPARTURE III. THE UPWARD DEPARTURE The second arrow in appellant's quiver targets the upward departure. We examine such departures within the tripartite framework erected in United States v. Diaz-Villafane, _____________ ______________ 874 F.2d 43, 49-50 (1st Cir.), cert. denied, 493 U.S. 862 (1989). _____ ______ We first review de novo whether the circumstances relied upon by __ ____ the sentencing court are, as a legal matter, sufficient to justify a departure; we then apply clear-error oversight to determine whether these circumstances, if conceptually proper, actually exist in the particular case; and, finally, we review the direction and degree of the departure for reasonableness. See id. at 49; see also United States v. Trinidad-Lopez, 979 F.2d ___ ___ ___ ____ _____________ ______________ 249, 252 (1st Cir. 1992); Unite States v. Brown, 899 F.2d 94, 96- ____________ _____ 97 (1st Cir. 1990). Explicitly conceding that the first two prongs of this test are satisfied here, appellant assails the departure's ____________________ 6We are aware that one court has held that an obstruction- of-justice adjustment may lie even if no investigation federal, state, or local is in progress. See United States v. Barry, ___ ______________ _____ 938 F.2d 1327, 1334-35 (D.C. Cir. 1991). Although we need not reach this question, we view Barry's continued vitality with some _____ skepticism. For one thing, amendments to the commentary have deleted much of the language relied upon by the Barry court. See _____ ___ U.S.S.G. App. C at amend. 347. For another thing, the text of the obstruction section, on its face, seems to require that some investigation be underway. See U.S.S.G. 3C1.1; see also United ___ ___ ____ ______ States v Kirkland, 985 F.2d 535, 537-38 (11th Cir. 1993); United ______ ________ ______ States v. Luna, 909 F.2d 119, 120 (5th Cir. 1990) (per curiam). ______ ____ 11 magnitude. He contends that the district court failed sufficiently to justify the degree of its departure and that the sentence imposed is beyond the bounds of reasonableness. His contentions are insubstantial. A. Stating Reasons. A. Stating Reasons. ________________ It is true that a sentencing court must provide a statement of the reasons undergirding a departure from the GSR. See 18 U.S.C. 3553(c) (1988). Here, however, the lower court ___ honored the statutory imperative, furnishing three specific reasons for the departure. It found that (1) there was a great likelihood of recidivism,7 (2) appellant's record included several offenses for which he had received no criminal history points, yet, even so, his criminal history score far outstripped what was necessary to place him in CHC VI, and (3) appellant's record also revealed sentences of substantially more than one year imposed as a result of independent crimes committed on different occasions. Once the court gave so precise a statement ____________________ 7Appellant's offhand suggestion that the district court lacked a factual basis for this conclusion is jejune. The court supportably found that appellant began planning the offense of conviction while still in prison and embarked upon it "almost immediately upon release." The court could reasonably have believed that so brief an interval between being a prisoner and implementing a sophisticated crime was a fair indication, under all the circumstances, that recidivism was a highly likely eventuality. We discern no clear error in this finding. 12 of reasons, the statute was satisfied.8 We do not think that a district court must dissect its departure decision, explaining in mathematical or pseudo-mathematical terms each microscopic choice made in arriving at the precise sentence. See United States v. ___ _____________ Aymelek, 926 F.2d 64, 70 (1st Cir. 1991); Ocasio, 914 F.2d at _______ ______ 336. To impose such a requirement under the guise of procedural reasonableness would simply add a layer of unnecessary formality to the departure equation.9 We flatly reject so auxetic a notion, preferring to regard reasonableness as "a concept, not a constant." Ocasio, 914 F.2d at 336. ______ Let us be perfectly clear. Under the guidelines, ____________________ 8We note in passing that each of the three circumstances identified by the court below comprises a permissible basis for an upward departure. To illustrate, a sentencing court may consider departing when the CHC "does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. 4A1.3. Among the items of "reliable information" that may indicate the presence of such a situation are the existence of "prior sentence(s) not used in computing the criminal history category" and "prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions." U.S.S.G. 4A1.3(a), (b). 9Of course, we speak in terms of unguided departures. ________ Section 4A1.3, as it stood at the time appellant was sentenced, offered no guidance as to the extent of an upward departure based on the criminal history of a defendant in CHC VI. See Aymelek, ___ _______ 926 F.2d at 70; Ocasio, 914 F.2d at 336 n.4. The operative ______ guideline has since been amended to indicate that, when a sentencing court seeks to depart upward from CHC VI, it "should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." U.S.S.G. 4A1.3 (Nov. 1992); U.S.S.G. App. C at amend. 460. However, appellant does not suggest that the district court should have followed this particular methodology in applying the pre-amendment version of section 4A1.3. Hence, we do not consider the question. 13 upward departures carry with them a certain burden to explicate the decisionmaking process. See Aymelek, 926 F.2d at 70 ___ _______ (observing that a sentencing court must clearly articulate reasons for the scope of the departure). But when the court has provided a reasoned justification for its decision to depart, and that statement constitutes an adequate summary from which an appellate tribunal can gauge the reasonableness of the departure's extent, it has no obligation to go further and attempt to quantify the impact of each incremental factor on the departure sentence. See id. (ruling that, in reference to ___ ___ unguided departures, "a sentencing court need not resort at all to analogies"); Diaz-Villafane, 874 F.2d at 51-52 (questioning ______________ the wisdom of allowing unguided departure decisions to become mere "matter[s] of arithmetic" or products of "mechanistic bean- counting").10 Here, the sentencing court's articulated grounds for departing permit us adequately to assess the reasonableness of the departure sentence. No more is exigible. See Williams v. United States, 112 S. Ct. 1112, 1121 (1992) ___ ________ ______________ (stating that in gauging the reasonableness of a departure, a ____________________ 10While this circuit has explicitly refused to subject the concept of reasonableness to formulaic constraints, some other circuits have mandated a more mechanical approach to unguided departures. See, e.g., United States v. Thomas, 930 F.2d 526, ___ ____ ______________ ______ 531 (7th Cir.) ("The sentencing judge is . . . required to articulate the specific factors justifying the extent of his departure and to adjust the defendant's sentence by utilizing an incremental process that quantifies the impact of the factors considered by the court on defendant's sentence."), cert. denied, _____ ______ 112 S. Ct. 171 (1991); United States v. Lira-Barraza, 941 F.2d _____________ ____________ 745, 748-50 (9th Cir. 1991) (en banc) (similar). With due respect for this difference of opinion, we adhere to our circuit precedent. 14 reviewing tribunal must "look[] to the amount and extent of the departure in light of the grounds for departing" and to the purposes of sentencing). B. Reasonableness. B. Reasonableness. _______________ We move now to a consideration of the reasonableness vel non of the departure. In this case, the district court hiked ___ ___ appellant's sentence by twenty-one months, an increase of approximately 41% over the GSR's ceiling. Considering the seriousness of appellant's past criminal conduct, the extent to which his criminal history score exceeded that required for membership in CHC VI, and the court's supportable finding anent likely recidivism, we cannot say that the magnitude of this departure is unreasonable. See, e.g., Brown, 899 F.2d at 96-97 ___ ____ _____ (upholding as reasonable a twelve-month upward departure representing a 133% increase over the GSR's ceiling); Diaz- _____ Villafane, 874 F.2d at 51-52 (upholding as reasonable an eighty- _________ seven month upward departure representing a 264% increase over the GSR's top end); see also Ocasio, 914 F.2d at 337 (identifying ___ ____ ______ factors to be considered in reasonableness review). Appellant's contention that the court below acted unreasonably because it failed adequately to consider mitigating circumstances, namely, the chronological sequence and declining severity of his previous convictions, is utterly unconvincing. At the sentencing hearing, defense counsel urged the court not to depart because many of Emery's violent crimes took place in his youth. The court explicitly responded to this exhortation, 15 stating: "it is true that there has been some sort of hiatus in the seriousness of the criminal activity, but there is clearly reason here for upward departure." This is not a case, then, in which the district court did not consider countervailing considerations. See Ocasio, 914 F.2d at 337. Rather, the court ___ ______ focused on the grounds for mitigation but chose not to attach the weight to them that appellant obviously preferred. This considered weighing is just the sort of "judgment call" that should not ordinarily be disturbed in the course of reasonableness review, Diaz-Villafane, 874 F.2d at 49, especially ______________ when, as now, the ostensibly aggrieved party has given the appellate court no solid reason to question the trial judge's calibration of the scales. We need go no further. The court below plainly fashioned the sentence with defense counsel's recital of mitigating circumstances in mind. The end product a twenty-one month upward departure represented a choice that discounted the importance of those circumstances but that, nevertheless, came well within the court's discretion. Affirmed. Affirmed. _________ 16