8 F.3d 809
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
Huvar VALENCIA, Defendant, Appellant.
 No. 92-2306.
 United States Court of Appeals,
First Circuit.
 November 5, 1993
 
 Appeal from the United States District Court for the District of MAINE
 Bruce A. Jordan and Archer, Perry & Jordan, P.A., on brief for appellant.
 Jay P. McCloskey, United States Attorney, and Margaret D. McGaughey, Assistant United States Attorney, on brief for appellee.
 D.Me.
 AFFIRMED
 Before Breyer, Chief Judge, Torruella and Selya, Circuit Judges.
 Per Curiam.
 
 
 1
 Appellant Huvar Valencia pled guilty to a two count indictment charging conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371, and attempted smuggling of aliens into the United States in violation of 8 U.S.C. § 1324(a)(1)(A). The objects of the conspiracy were to travel and use telephone facilities in interstate commerce with intent to commit a crime in violation of 18 U.S.C. §§ 1952(a)(2) and 1952(a)(3), to attempt to bring aliens into the United States in violation of 8 U.S.C. § 1324(a)(1)(A), to transport firearms in interstate commerce with intent to commit a felony in violation of 18 U.S.C. § 924(b), and to transfer a firearm knowing it would be used to commit a crime of violence in violation of § 18 U.S.C. 924(h). In sentencing the defendant, the district court upwardly departed from the applicable guideline sentencing range (GSR) of four to ten months and sentenced Valencia to a term of twenty-four months. Valencia appeals from this sentence.
 
 
 2
 For the most part, the facts in this case are not in dispute. According to the Pre-Sentence Report, Valencia was a participant in a plot to break some members of the Medellin cocaine cartel out of a Canadian prison and transport them to the United States, from where they would be flown to Colombia. Valencia's alleged role was to deliver vehicles and weapons[1] from the United States to members of a break-out team in Canada. Co-conspirators based in Canada, and not the defendant, served time in Canadian prisons for conduct related to this break-out plan, in addition to receiving prison terms in the United States district court.[2] The sole issue on appeal is whether the district court departed upward to the extent that it did in an impermissible attempt to achieve symmetry between Valencia's sentence and the combined Canadian and United States sentences of his co-conspirators.
 
 
 3
 The district court stated at sentencing that the upward departure was rooted principally in U.S.S.G. § 5K2.9.[3] The court found § 5K2.9 applicable as Valencia committed his offenses in order to facilitate or conceal the commission of another offense-the attempted prison breakout of the Medellin cartel members. In addition, the court stated that in deciding to depart upward, it considered the fact that semi-automatic weapons were used, the disruption of governmental function that would have resulted had the plan to break into the Canadian prison been successful, and "the nature of the unusual and extreme conduct given the analysis of the Court in United States v. Johnson."[4]
 
 
 4
 The upward departure was from Offense Level 9 to Offense Level 17. The defendant's twenty-four month sentence represented a 140% increase over the GSR's ceiling. In explaining the extent of the upward departure, the district court stated that it had considered the same factors it had considered in deciding to depart upward. The court also stated that it had departed upward to the level that it did based on the defendant's role in the undertaking and his culpability.[5]
 
 
 5
 In United States v. Wogan, 938 F.2d 1446 (1st Cir.), cert. denied, U.S., 112 S. Ct. 441, 116 L. Ed. 2d 460 (1991), we held that the district court erred, as a matter of law, in basing a downward departure solely in an effort to achieve sentencing parity between Wogan and his co-defendant. In the instant case, the district court noted from the bench that it was mindful of our decision in Wogan and specifically stated that it did not depart to maintain any kind of equalization or symmetry between Valencia's sentence and those of his co-defendants. The written judgment stated, however, that the court "also took into consideration the sentences of the co-defendants, including the imposition of Canadian prison terms for like or similar conduct." Valencia relied on this apparent conflict in support of his contention that, contrary to the teaching of Wogan, the district court departed to the extent that it did to achieve symmetry between his own sentence and those of co-defendants. At the request of the government, however, we remanded the case to the district court to clarify the record. In response, the district court issued a memorandum stating that the oral statements made by the court at sentencing correctly reflect the basis of its sentencing decision and that "[t]he sentences received by Mr. Valencia's co-defendants were not considered by the court in departing from the Guidelines or the extent of such departure." We are satisfied that the district court's response on remand disposes of Valencia's argument to the extent based on any arguable conflict in statements made by the district court. See also United States v. Villano, 816 F.2d 1448, 1450 (10th Cir. 1987) (en banc) ("It is a firmly established and settled principle of federal criminal law that an orally pronounced sentence controls over a judgment and commitment order when the two conflict. This rule is recognized in virtually every circuit.") (footnote omitted). Accordingly, the judgment is affirmed. Loc. R. 27.1.
 
 
 
 1Although Valencia pled guilty to conspiracy to receiving and transferring firearms, he denied at sentencing that he wasthe person who actually delivered these weapons across the border.
 
 
 [2]
 Co-conspirators received sixteen month sentences in the United States district court and, it appears, received twenty-four month sentences in Canadian courts (a total of forty months in United States and Canadian sentences). Valencia argues that he should have received, at most, a sixteen month sentence in the district court and that the only explanation for his twenty-four month sentence was an attempt by the district court to achieve sentencing symmetry between his term and his co-defendants' total terms
 
 
 [3]
 Section 5K2.9 Criminal Purpose (Policy Statement)
 If the defendant committed the offense in order to facilitate or conceal the commission of another offense, the court may increase the sentence above the guideline range to reflect the actual seriousness of the defendant's conduct.
 
 
 [4]
 In Johnson, 952 F.2d 565 (1st Cir. 1991), cert. denied, U.S., 113 S. Ct. 58, 121 L. Ed. 2d 27 (1992), defendants were convicted of conspiracy and substantive offenses relating to their roles in terrorist activities directed towards the British in Northern Ireland. On appeal, we upheld as proper grounds for upward departure the circumstances relied upon by the district court, including "the potential for death to innocent people" and the "extreme" amount of "planning and sophistication" in the conspiracy. 952 F.2d at 583. The upward departure here is warranted on the same grounds
 
 
 [5]
 Defendant argues that the district court did not specifically explain why it departed upward to Level 17. We have previously stated that
 when the court has provided a reasoned justification for its decision to depart, and that statement constitutes an adequate summary from which an appellate tribunal can gauge the reasonableness of the departure's extent, it has no obligation to gofurther and attempt to quantify the impact of each incremental factor on the departure sentence.
 United States v. Emery, 991 F.2d 907, 913 (1st Cir. 1993). Here, the court's articulated grounds for departing, and for the extent of the departure, were adequate.