# United States Court of Appeals

## For the First Circuit

Nos. 02-2064,
    02-2065

UNITED STATES,

Appellee,

v.

DANA EUGENE MCGOVERN; MCGOVERN'S AMBULANCE SERVICE, INC.,

Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Torruella, Circuit Judge,
Bownes, Senior Circuit Judge,
and Lynch, Circuit Judge.

Leonard I. Sharon and Sharon, Leary & Detroy on brief for appellant.

F. Mark Terison, Senior Litigation Counsel, and Paula D. Silsby, United States Attorney, on brief for appellee.

May 21, 2003

**LYNCH**, **Circuit Judge**. Dana McGovern, the owner and operator of McGovern's Ambulance Service, Inc. (MAS), and his company pled guilty to Medicare and Medicaid fraud, 18 U.S.C. § 1347 (2000), as well as obstruction of a federal audit, 18 U.S.C. § 1516, and money laundering, 18 U.S.C. § 1956(a)(1). He admitted to more than $800,000 of fraud. McGovern's sentence was enhanced for obstruction of justice, arising out of his earlier submission of false information to federal auditors before that audit led to the criminal investigation and prosecution. McGovern appeals the enhancement, arguing that the attempted obstruction did not occur "during the course of the investigation . . . of the instant offense of conviction." U.S.S.G. § 3C1.1. We reject this argument on the grounds that the Medicare and Medicaid audits had an adequate link to the ensuing criminal proceedings and so were during the course of the investigation of the offense of conviction.

## I.

Dana McGovern was the sole shareholder, Director and President of MAS. MAS was based in Calais, Maine, had business locations elsewhere in Maine, and owned a Canadian affiliate. MAS, which was licensed by the Maine Emergency Medical Services Office of the state's Department of Public Safety, provided transportation by ambulance and wheelchair van for Medicare and Medicaid beneficiaries.

Medicaid is a health care program jointly funded by federal and state sources that provides health insurance and nursing home coverage to low income individuals. It is administered by the Centers for Medicare and Medicaid Services (CMS) and by state agencies such as the Maine Department of Human Services. Medicare is a federally subsidized health insurance program for the elderly and for persons with certain disabilities that is administered by CMS and private contractors. See generally Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & the Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 74 n.24 (1st Cir. 2003) (contrasting Medicare and Medicaid programs). The Medicare and Medicaid programs are both health care benefit programs as defined in 18 U.S.C. § 24(b). See San Lazaro Ass'n v. Connell, 286 F.3d 1088, 1093 (9th Cir. 2002); United States v. Herman, 172 F.3d 205, 206 (2d Cir. 1999); United States v. Sriram, 147 F. Supp. 2d 914, 942 (N.D. Ill. 2001).

Medicaid and Medicare each have specific ambulance regulations and billing instructions, which McGovern had in his possession. Reimbursements can include a base rate, mileage for basic or advanced life support services, and separate payments for administration of oxygen and other incidentals. Providers can only bill for "loaded mileage," which is when the beneficiary is in the vehicle. Providers cannot charge for the distance traveled to a pick-up point or from a drop-off point. Further, an ambulance

-3-

cannot be used if the patient is healthy enough to use any other method of transportation, such as a wheelchair van, regardless of whether a van is actually available. In addition, an ambulance cannot be used for routine transport to and from a doctor's office.

Each time it transported a patient, the MAS ambulance crew was required by regulations to fill out a "run sheet," which required the name of the patient, the place of departure, the destination, and the names of the MAS employees in the ambulance. Completed run sheets were placed in a locked box and retrieved by or delivered to McGovern. McGovern used the run sheets as a basis to bill Medicare and Medicaid for each ambulance run. He personally handled the submission of the ambulance billings to Medicare and Medicaid until early 1998. At that time, a part-time employee, Ruth Campbell, was hired to enter the billing information established by McGovern and then submit Medicare bills electronically. Campbell was not authorized to make changes in the pricing, and even after she was hired McGovern continued to input and submit some of the bills himself.

Defendants defrauded Medicare and Medicaid from August 1996 to November 1999 by billing for unnecessary services and for services they had not rendered. At McGovern's instruction, MAS employees used ambulances to transport patients who were able to take taxis and other alternative forms of transportation, and used run sheets for ambulances when transporting beneficiaries by

wheelchair van. MAS employees, as instructed, also falsified parts of run sheets by, for example, inaccurately representing non-reimburseable destinations (such as a doctor's office) as reimburseable destinations (such as a hospital). McGovern prepared and submitted bills to Medicare and Medicaid based on these inaccurate run sheets, which had been falsified at his express instructions.

McGovern also falsified run sheets himself. When employees refused to misrepresent a destination, for example, he wrote the name of a hospital over the name of the doctor's office, which had been written by an employee. In addition, he told at least one MAS employee to leave blank the mileage traveled, presumably so he could fill in excess miles. MAS repeatedly charged Medicare and Medicaid for excess mileage. Furthermore, the box for administration of oxygen was checked on some run sheets after the run sheets were completed and placed in the lockbox. Finally, MAS repeatedly charged Medicare and Medicaid for advanced life support services in situations where employees accurately represented (on the run sheets they placed in the lockbox) that they had provided only basic life support services.

Complaints led to administrative audits by the U.S. Department of Health and Human Services in 1995 and 1998. In 1995, Medicare investigated a complaint that MAS transported a beneficiary 200 feet, but billed Medicare for 6 miles. By phone

and letter, a Medicare fraud investigator explained to McGovern the correct Medicare billing practices regarding loaded mileage. As a result of this investigation, Medicare recouped $2,691.65 for inappropriate mileage charges in 1994 and 1995, but did not then instigate a criminal investigation.

In March 1998, Medicare received a complaint from a Medicare beneficiary about MAS. MAS had transported nursing home residents to shelters during a storm earlier that year. Investigators found that MAS falsely billed Medicare for a trip to the hospital (which, unlike a trip to a shelter, is reimburseable), exaggerated the loaded mileage, falsely billed for advanced life support services, and transported via ambulance a beneficiary whose medical condition apparently permitted her to travel by other means.

This finding led to progressively more expansive reviews by Medicare and Medicaid. These audits uncovered numerous suspicious claims. Medicaid, for example, discovered that MAS wheelchair vans had routinely (and improperly) billed for "unloaded" miles (when the patient was not in the vehicle). As a result, Medicaid administratively collected from MAS $158,254.22 in overpayments for wheelchair van reimbursements.

McGovern and MAS submitted false run sheets to investigators conducting these administrative audits. On or about September 25, 1998 and January 5, 1999, defendants submitted to the

Medicare and Medicaid representatives a total of nineteen run sheets containing false information about the services rendered to beneficiary Judith Mahar between July 1997 and January 1998. The run sheets falsely indicated that oxygen was given to Mahar and that an ambulance, rather than a wheelchair van, was used to transport her. The boxes for administration of oxygen were checked <u>after</u> employees completed the run sheets and placed them in the lockbox. McGovern also sent a letter to Medicare investigators blaming excess or inappropriate charges on the "new girl" (Campbell) whom he said was doing MAS's billing.

The findings of the administrative audits led to the initiation of a federal criminal investigation. McGovern and MAS were indicted on November 16, 2000. That indictment was superseded by a 214-count indictment on May 15, 2001. Counts 210 and 211 of the superseding indictment charged the defendant with obstruction of a federal audit pursuant to 18 U.S.C. § 1516. They charged defendant with submission to auditors of the nineteen falsified run sheets pertaining to Mahar. The remaining counts alleged violations of 18 U.S.C. § 1347 (health care fraud) and 18 U.S.C. § 1956(a)(1) (money laundering) and sought forfeiture of cash and property pursuant to 18 U.S.C. § 982(a)(1), (7). The indictment covered the same wrongdoing during the same period as the Medicare and Medicaid audits. This is true of both the charges for

obstruction of a federal audit and the underlying conduct that the obstruction sought to hide.

Both McGovern and MAS entered guilty pleas on January 9, 2002. McGovern and MAS each pled guilty to 40 counts, including both counts of obstructing a federal audit, 22 counts of fraud, 16 counts of money laundering, and 2 forfeiture counts. The remaining counts, for fraud and money laundering, were later dismissed.

At the sentencing hearing on July 30, 2002, the principal disputed issue was whether McGovern was subject to a two-level upward enhancement for obstructing or impeding the administration of justice pursuant to U.S.S.G. § 3C1.1, which states:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

The parties stipulated that the administrative audits which McGovern obstructed (by submitting false run sheets) were not a part of any criminal investigation. The district court held that McGovern was subject to the two-level upward enhancement for obstructing the administrative audits under either note 4 or note 8 to U.S.S.G. § 3C1.1.[1] Note 4 says:

---

[1] Note 8 provides:

> If the defendant is convicted both of an obstruction offense (e.g., 18 U.S.C. § 3146 (Penalty for failure to appear); 18 U.S.C. § 1621 (Perjury generally)) and an

The following is a non-exhaustive list of examples of the types of conduct to which this adjustment applies:

. . . .

(c) producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding.

The district court found that McGovern had a total offense level of 23 and a criminal history category of I. The applicable guideline range is 46 to 57 months and a fine of $10,000 to $100,000. Absent the upward enhancement for obstruction of justice, the applicable guideline range would have been 37 to 46 months and a fine of $7,500 to $75,000. The court sentenced McGovern to 49 months in prison and to 3 years of supervised release. The court also ordered restitution of $729,875.19, for which defendants were jointly and severally liable, and a mandatory special assessment of $3,800. It waived a fine, on the grounds that McGovern would not have the means to pay. The court found that MAS had a total offense level of 24. It sentenced MAS to five

underlying offense (the offense with respect to which the obstructive conduct occurred), the count for the obstruction offense will be grouped with the count for the underlying offense under subsection (c) of § 3D1.2 (Groups of Closely Related Counts). The offense level for that group of closely related counts will be the offense level for the underlying offense increased by the 2-level adjustment specified by this section, or the offense level for the obstruction offense, whichever is greater.

Since we affirm on the basis of U.S.S.G. § 3C1.1 note 4(c), we do not reach note 8.

years of probation, restitution of $729,875.19, and a mandatory special assessment of $15,200.

Since the district court did not impose an upward enhancement pursuant to U.S.S.G. § 3C1.1 on MAS, this appeal concerns only McGovern himself.

## II.

"We review the legal determination of the guideline's meaning and scope de novo, but allow due deference to the district court's factfinding, reviewing it only for clear error." United States v. Duclos, 214 F.3d 27, 31 (1st Cir. 2000) (citations omitted). An interpretation of a guideline in the notes and other commentary is given controlling weight unless it is plainly erroneous, unconstitutional, contrary to a federal statute, or inconsistent with the guideline itself. Stinson v. United States, 508 U.S. 36, 45 (1993).

McGovern contests the district court's ruling that the obstruction occurred "during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. He argues that the administrative audits by Medicare and Medicaid were not "official investigation[s]" pursuant to note 4(c) because there was no pending criminal proceeding at the time of the administrative audit and, absent a qualifying

investigation, no enhancement could be made.[2] McGovern notes that the administrative audit was undertaken before the criminal investigation, and that the government expressed its determination at the sentencing hearing to avoid "even . . . the appearance that the administrative proceedings are driven by the criminal investigation."

The guideline itself contains no requirement of an "official" investigation. And while note 4 does refer to an "official investigation," it does so by way of example. There is no requirement that the investigation be "official."

McGovern's real claim is that there is an insufficient nexus to show that he "attempted to obstruct . . . the administration of justice during the course of the investigation . . . of the instant offense of conviction." U.S.S.G. § 3C1.1. He seems to make both temporal- and identity-type arguments. He contends that the conduct took place before there was any criminal investigation and that Medicaid/Medicare audits are not investigations of the offense of conviction. This court has already rejected both types of arguments.

---

[2] McGovern adequately preserved the issue for appeal by objecting to the presentence report (PSR) on this precise ground (that U.S.S.G. § 3C1.1 does not apply to obstruction of an administrative audit because an audit is not an official investigation) and then arguing the point at length during the sentencing hearing. See United States v. Fox, 889 F.2d 357, 358-59, 361 (1st Cir. 1989) (treating issue as adequately preserved where defendant objected on this basis to the PSR).

In <u>United States</u> v. <u>Emery</u>, 991 F.2d 907 (1st Cir. 1993), we rejected the temporal argument, holding that the fact that there was no pending federal criminal investigation at the time of the obstruction did not disqualify a defendant from an enhancement where there was a "close connection between the obstructive conduct and the offense of conviction." <u>Id.</u> at 911; <u>see</u> <u>United States</u> v. <u>Mills</u>, 194 F.3d 1108, 1115 (10th Cir. 1999) (U.S.S.G. § 3C1.1 nexus requirement satisfied where prison guard destroyed compromising evidence <u>before</u> any investigation was initiated); <u>United States</u> v. <u>Barry</u>, 938 F.2d 1327, 1335 (D.C. Cir. 1991) ("[T]he enhancement [§ 3C1.1] applies if the defendant attempted to obstruct justice in respect to the investigation or prosecution of the offense of conviction, even if the obstruction occurred before the police or prosecutors began investigating or prosecuting the specific offense of conviction."). <u>Emery</u> also holds that the investigation need not even be federal, so long as some investigation is underway. 991 F.2d at 912.

In <u>United States</u> v. <u>Pilgrim Market Corp.</u>, 944 F.2d 14 (1st Cir. 1991), we addressed the identity argument, holding that obstruction of a U.S. Department of Agriculture investigation of the sale of contaminated meat was an investigation for purposes of the guideline where the subject matter of the administrative investigation and the indictment was the same, and the obstructive conduct was meant to hide evidence of criminal wrongdoing. <u>Id.</u> at

20-21.  It does not matter whether the underlying administrative investigation was itself civil or criminal so long as the investigation which has been obstructed has a sufficient connection to the offense of conviction.  See United States v. LaSalle Nat'l Bank, 437 U.S. 298, 314 (1978) (a federal audit has an "interrelated criminal/civil nature" since it has "the normally inseparable goals of examining whether the basis exists for criminal charges and for the assessment of civil penalties").

Purporting to rely on United States v. Magana-Guerrero, 80 F.3d 398 (9th Cir. 1996), McGovern argues that administrative audits are not official investigations pursuant to note 4(c).  This reliance is misplaced.  The main issue in the relevant part of Magana-Guerrero is whether actual obstruction is a prerequisite for an upward enhancement pursuant to note 4(h) (then 3(h)) of U.S.S.G. § 3C1.1.  See 80 F.3d at 400-01.  Here, there was actual obstruction.  McGovern's argument mixes apples and oranges.  It is already the rule of this circuit that there must be a common-sense connection between the obstructed investigation and the offense of conviction.  Emery, 991 F.2d at 911.

The evidence supporting the enhancement was ample.  The decision of the district court to impose a two-level upward enhancement pursuant to note 4(c) to U.S.S.G. § 3C1.1 was plainly correct.

**Affirmed**.

-13-