**UNITED STATES of America,**
**Appellee,**

v.

**Marshall A. AYERS, Defendant–**
**Appellant.**

**Docket No. 04–0103.**

United States Court of Appeals,
Second Circuit.

Argued: Sept. 13, 2004.

Decided: July 21, 2005.

Paul J. Evangelista (Molly Corbett, on the brief), Albany, NY, for Defendant–Appellant.

Robert P. Storch, Senior Litigation Counsel (Glenn T. Suddaby, United States Attorney for the Northern District of New York; David M. Grable, Assistant United States Attorney, of counsel), United States Attorney's Office for the Northern District of New York, Albany, NY, for Appellee.

Before: SACK, RAGGI, and HALL, Circuit Judges.

PER CURIAM.

Defendant Marshall Ayers ("Ayers" or "defendant") pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). On December 9, 2003, the United States District Court for the Northern District of New York (Lawrence E. Kahn, *J.*) sentenced defendant to a term of 71 months' imprisonment followed by three years of supervised release. In determining the appropriate Guideline range under the United States Sentencing Guidelines, the district court increased Ayers's base offense level for obstruction of justice pursuant to U.S.S.G. § 3C1.1 of the Guidelines and also denied defendant's motion to adjust his offense level downward for acceptance of responsibility under U.S.S.G. § 3E1.1. On appeal, Ayers challenges the obstruction of justice enhancement and, in turn, the denial of the motion to adjust his offense level for acceptance of responsibility.

## I. Background

In June of 2001, Ayers allegedly shot and killed seventeen-year old Broderick Greene. With Ayers at the time were two friends, one of whom was Ramsey Moore. Moore was later taken to a police station for questioning. Afterwards, Moore met up again with defendant. Ayers asked Moore about the police questioning and then instructed Moore to get rid of the gun used to shoot Greene. At Ayers's direction, Moore retrieved the gun, had it cut into several pieces, and threw the pieces into the Hudson River.

Ayers was eventually indicted for two felonies in state court: murder in the second degree and criminal possession of a weapon in the second degree. A jury acquitted him of both felony charges but convicted him of a reduced misdemeanor weapons possession charge. After receiving permission from the Department of Justice, the government brought this successive federal prosecution based on Ayers's weapon possession and his status as a convicted felon. Ayers pled guilty to the single count federal indictment.

At sentencing, the district court adopted the recommendation of the pre-sentence investigation report and enhanced defendant's Guideline base offense level based on defendant's obstruction of justice in ordering Moore to destroy the gun. Specifically, the court found that "the defendant did, in fact, obstruct the instant federal investigation by directing Ramsey Moore to destroy and dispose of the firearm that is the subject of and material to the instant offense. Mr. Ayers'[s] act was willful and knowing as he decided to and directed the destruction of material evidence after he had fled to a different city and had been informed by Moore of the police inquiry about the shooting." For that obstruction, the district court increased Ayers's base offense level by two points pursuant to § 3C1.1; the court also

denied him credit for acceptance of responsibility under § 3E1.1.

## II. Discussion

Obstruction of justice enhancements are subject to a mixed standard of review. *United States v. Khedr*, 343 F.3d 96, 102 (2d Cir.2003). Accordingly, we accept the findings of fact by the district court unless clearly erroneous. *United States v. Woodard*, 239 F.3d 159, 161 (2d Cir.2001); *see also United States v. Garcia*, 413 F.3d 201, 2005 WL 1444146, at *15–17 (2d Cir. June 21, 2005) (explaining that clear error standard of review remains applicable for appellate challenges to judicial fact-finding at sentencing after *United States v. Booker*, — U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)). Whether those facts constitute obstruction of justice, however, is a matter of legal interpretation subject to *de novo* review. *Khedr*, 343 F.3d at 102. Because the relevant facts are not in dispute, we are reviewing only whether they constitute obstruction mandating a two-point offense level increase.

■ Pursuant to § 3C1.1 of the Sentencing Guidelines, an enhancement for obstruction of justice is appropriate where:

(A) the defendant willfully obstructed or impeded ... the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense ....

During the state police investigation into Greene's murder, Ayers ordered Moore to destroy and dispose of the gun. That conduct is clearly obstructive if the destroyed evidence was material to an official investigation or judicial proceeding involving the instant offense of conviction, *i.e.*, possession of a firearm by a convicted

felon. *See* U.S.S.G § 3C1.1 cmt. n. 4(d) (listing among the examples of obstructive conduct, "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding"). Defendant's principal argument is that because his conduct occurred prior to the start of the federal investigation into the weapons charge, the evidence, at the time it was destroyed, could not have been material to an official investigation within the meaning of § 3C1.1. For that reason, he asserts, the conduct could not be grounds for an obstruction of justice enhancement. Defendant's argument, which appears premised only on the first factor identified in § 3C1.1, is without merit.

This court has previously indicated that obstructive conduct which takes place prior to the start of a federal criminal investigation of the particular offense of conviction can warrant an enhancement under § 3C1.1. In *United States v. Fiore,* 381 F.3d 89, 94–95 (2d Cir.2004), for example, we upheld an obstruction of justice enhancement for a defendant who committed perjury during an SEC civil investigation that occurred prior to the initiation of a federal criminal investigation. As we explained: "[w]here federal administrative and prosecutorial jurisdiction overlap, subsequent criminal investigations are often inseparable from prior civil investigations, and perjury in the prior proceeding necessarily obstructs—if successful, by preventing—the subsequent investigation." *Id.* at 94; *see also United States v. Bennett,* 252 F.3d 559, 566 (2d Cir.2001) (applying enhancement to obstruction of an SEC investigation and noting that "the enhancement applies to efforts to obstruct an 'official investigation' which includes investigations that occur prior to the indictment" (citation omitted)).

The same logic pertains to the alleged obstruction of a state investigation into conduct that is the subject of the federal crime of conviction. As the Fourth Circuit explained:

> The failure of the guideline to distinguish between an investigation by federal officials as opposed to state officials undoubtedly is founded in a recognition that state officers are authorized to and frequently do investigate criminal conduct that ultimately is prosecuted under federal law. Indeed, in the initial stages of a criminal investigation, it may be anything but clear whether the conduct being investigated violates state law, federal law, or both. Accordingly, the appropriate focus of inquiry is not whether federal officials had begun involvement with the investigation, but whether the investigation was for the 'instant offense [of conviction].'

*United States v. Self,* 132 F.3d 1039, 1042–43 (4th Cir.1997); *see also United States v. Zagari,* 111 F.3d 307, 328 (2d Cir.1997) (holding that perjury during state civil action could support obstruction of justice enhancement in federal criminal proceeding because of "quite close" connection between the two cases). In this case, the state investigation into the murder of Broderick Greene plainly encompassed the conduct at issue in the federal crime of conviction, i.e., the legality of Ayers's possession of a firearm. Indeed, Ayers was charged with unlawful weapon possession under New York law in the state prosecution and convicted on a misdemeanor weapon charge. Thus, there can be no question that Ayers's order to destroy the murder weapon occurred "during the course of the investigation" of the conduct at issue in the "instant offense of conviction." U.S.S.G. § 3C1.1.

In so ruling, we agree not only with the Fourth Circuit, but our other sister circuits that have similarly concluded both that it is irrelevant to the first factor of

§ 3C1.1 whether a federal investigation is underway and also that obstructive conduct that occurs during a state investigation can satisfy this prong of that Guideline. *See United States v. Roberts,* 243 F.3d 235, 237–40 (6th Cir.2001) (per curiam); *United States v. Adediran,* 26 F.3d 61, 64–65 (8th Cir.1994); *United States v. Emery,* 991 F.2d 907, 910–12 (1st Cir. 1993); *United States v. Lato,* 934 F.2d 1080, 1082–83 (9th Cir.1991). We agree with those circuits that neither the Guideline itself, nor its commentary, draws a state/federal distinction in this regard. *Emery,* 991 F.2d at 912; *Lato,* 934 F.2d at 1083; *see also* Zagari, 111 F.3d at 328. Commentary note 4(d) of Guideline § 3C1.1, for example, speaks only of "an official investigation or judicial proceeding" and does not purport to limit its reach to *federal* investigations or *federal* judicial proceedings. *See Emery,* 991 F.2d at 912. The "repeated employment of generic, all-encompassing terms. is a telltale, indicating how section 3C1.1 should be construed." *Id.* The purpose underlying this particular increase to the offense level informs our determination that its application is not controlled by whether a formal federal investigation was begun prior to the obstructive act. "[T]he obstruction-of-justice enhancement rests on the rationale that 'a defendant who commits a crime and then ... [makes] an unlawful attempt to avoid responsibility is more threatening to society and less deserving of leniency than a defendant who does not so defy' the criminal justice process." *Id.* (alteration in original) (*quoting United States v. Dunnigan,* 507 U.S. 87, 97, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993)).

For these reasons, we conclude that Ayers's obstructive conduct—his successful effort to dispose of the firearm that he used in the shooting and that he possessed in violation of both state and federal law— which occurred while the state investigation was ongoing but before the federal investigation commenced, warrants the application of § 3C1.1 to his sentencing for the federal crime. For purposes of U.S.S.G. § 3C1.1 that act constituted obstruction of the federal investigation of Ayers's violation of 18 U.S.C. §§ 922(g) and 924(a)(2).

■ Ayers also argues that the district court made insufficient findings with regard to how his conduct impeded the federal investigation and whether his actions were willful. These arguments are also without merit. The "willfulness" required by § 3C1.1 pertains to obstruction of "the administration of justice," not a particular investigation. *See* U.S.S.G. § 3C1.1. Ayers could not have more clearly demonstrated such willfulness than by ordering another person to destroy and dispose of the firearm which he knew police were then seeking in connection with a murder investigation. By so doing, Ayers manifested his intent to obstruct and impede law enforcement efforts to locate that weapon and to charge him with its unlawful possession or use. Precisely because the firearm constituted material evidence of the federal crime of conviction as well as the state-charged murder, there can be no question that Ayers willfully obstructed the administration of justice by both sovereignties.

■ Finally, because the district court appropriately enhanced Ayers's base offense level for obstruction of justice, we reject Ayers's argument that it erred as a matter of law by denying him credit for acceptance of responsibility. *See United States v. Reed,* 49 F.3d 895, 903–04 (2d Cir.1995) ("The denial of credit for acceptance of responsibility ... is usually appropriate when the court has found that the defendant's offense level should be increased ... for obstruction, or attempted obstruction, of justice."); *United States v. Defeo,* 36 F.3d 272, 277 (2d Cir.1994) (not-

ing that "great deference" is due the district court with regard to determining whether a defendant should receive credit for acceptance of responsibility).

Accordingly, we AFFIRM the judgment of conviction insofar as Ayers challenges the district court's calculation of the applicable Guideline offense level. Since this case was argued, the Supreme Court issued its decision in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). We therefore REMAND this case to the district court for further consideration in light of *United States v. Crosby*, 397 F.3d 103 (2d Cir.2005).