18-1965-cr
*United States v. DiMartino*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16ᵗʰ day of December, two thousand nineteen.

PRESENT:   PETER W. HALL,
           JOSEPH F. BIANCO,
                   *Circuit Judges*,
           TIMOTHY C. STANCEU,
                   *Judge.**

———————————————————————

United States of America,
           *Appellee*,

           v.                                          18-1965

Kevin DiMartino,
           *Defendant-Appellant.*

———————————————————————

| | |
|---|---|
| For Appellant: | BRUCE R. BRYAN, ESQ., Syracuse, NY. |
| For Appellee: | TIFFANY H. LEE, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Rochester, NY. |

*Chief Judge Timothy C. Stanceu, of the United States Court of International Trade, sitting by designation.

Appeal from a judgment of the United States District Court for the Western District of New York (Geraci, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Defendant-Appellant Kevin DiMartino appeals the June 28, 2018 judgment of the United States District Court for the Western District of New York (Geraci, *J.*) sentencing him to 125 months' imprisonment to be followed by fifteen years' supervised release and imposing several conditions of supervision. DiMartino pleaded guilty to knowing possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). The plea agreement stipulated that DiMartino's Sentencing Guidelines range would be 78 to 97 months of imprisonment, but DiMartino's post-plea conduct led the United States Probation Office to revise its recommendation to a Guidelines range of 168 to 210 months based on the application of additional sentencing enhancements and the denial of a sentencing reduction for acceptance of responsibility. The District Court did allow for the three-level sentencing reduction for acceptance of responsibility but applied the other two upward enhancements for obstruction of justice and distribution of images, which resulted in a Guidelines range of 121 to 151 months' imprisonment. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the arguments on appeal.

DiMartino first challenges the procedural reasonableness of his 125-month sentence, arguing that the District Court erred by applying a two-level enhancement for obstruction of justice. A district court commits procedural error if it "(1) fails to calculate the Guidelines

range; (2) is mistaken in the Guidelines calculation; (3) treats the Guidelines as mandatory; (4) does not give proper consideration to the § 3553(a) factors; (5) makes clearly erroneous factual findings; (6) does not adequately explain the sentence imposed; or (7) deviates from the Guidelines range without explanation." *United States v. Johnson*, 567 F.3d 40, 51 (2d Cir. 2009). "A district court's factual findings at sentencing need be supported only by a preponderance of the evidence, and such findings may be overturned only if they are clearly erroneous." *United States v. Ryan*, 806 F.3d 691, 694 (2d Cir. 2015) (internal quotation marks and citation omitted). Although we review factual findings for clear error, "[w]hether those facts constitute obstruction of justice . . . is a matter of legal interpretation subject to *de novo* review." *United States v. Ayers*, 416 F.3d 131, 133 (2d Cir. 2005).

DiMartino contends that there was insufficient evidence that he intended to obstruct justice. Specifically, he argues that (1) the District Court should not have credited his boyfriend's recantation of his prior statement that DiMartino was never alone with the boyfriend's young son, and (2) there is insufficient evidence that DiMartino asked his friend, Paula Nuccie, to obtain a statement from DiMartino's boyfriend saying that DiMartino was never alone with the boyfriend's son. Whether DiMartino had the intent of securing a false statement from his boyfriend is a factual matter. *See United States v. Riley*, 452 F.3d 160, 165 (2d Cir. 2006).

We are not persuaded by DiMartino's argument that his boyfriend's recantation has insufficient indicia of reliability. The text messages between the boyfriend and his son's mother discussing how the boyfriend would leave the child with DiMartino at DiMartino's

3

house support the District Court's decision to credit the boyfriend's recantation rather than the prior statement. The phone call recorded by DiMartino's friends in October 2017 lends little credibility to the boyfriend's prior statement because the phone conversation was contrived for DiMartino's benefit. Nor does the letter from DiMartino's tenant cast doubt on the boyfriend's admission that he did in fact leave his son alone with DiMartino. The tenant's letter does not state that the tenant was always at DiMartino's house. And one of the occasions when DiMartino was alone with the boyfriend's son, according to the boyfriend, was not at DiMartino's house but rather in a truck parked at a warehouse.

It is true, as DiMartino points out, that Nuccie did not testify that DiMartino asked her to obtain a statement from the boyfriend saying DiMartino was never alone with the boyfriend's son. Having reviewed all the evidence in the record, however, we find sufficient support for the District Court's inference that DiMartino instructed Nuccie to financially support and otherwise assist the boyfriend with the intention of securing the false statement from the boyfriend. Nuccie's testimony, the recorded jail phone calls, and the text messages from Nuccie to the boyfriend on January 8, 2018 establish that: DiMartino, while in jail, asked Nuccie to provide various forms of assistance to the boyfriend,; Nuccie provided such assistance to the boyfriend; Nuccie told DiMartino that she was keeping tabs on the boyfriend and making sure he was doing what he was supposed to be doing; Nuccie arranged to have the boyfriend write both a character reference and a letter stating that the boyfriend never left DiMartino alone with the boyfriend's son; and Nuccie informed DiMartino, using coded allusions, that she got a letter or letters signed by the boyfriend. According to the pre-

4

sentence report ("PSR"), moreover, when Nuccie was interviewed by the FBI case agent, Nuccie indicated that "DiMartino told her to have [the boyfriend] testify that nothing happened between DiMartino and the minor victim" and that "DiMartino advised Nuccie to take care of [the boyfriend], paying his cell phone bills, taking his medication, and making sure he wasn't getting in trouble . . . so [the boyfriend] would testify on his behalf." PSR at 12 (¶ 50). It is arguably possible that DiMartino asked Nuccie to assist his boyfriend purely out of concern for him. But "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012).

DiMartino also challenges the substantive reasonableness of his 125-month sentence. We must "set aside a district court's *substantive* determination only in exceptional cases where the trial court's decision 'cannot be located within the range of permissible decisions.'" *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007)). "[W]e will reverse the district court's decision only if the sentence imposed amounts to a 'manifest injustice or shocks the conscience.'" *United States v. Spoor*, 904 F.3d 141, 156 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 931 (2019) (quoting *Rigas*, 583 F.3d at 124) (alteration omitted).

DiMartino argues, first, that the District Court should not have used the child pornography Guideline as a starting point for determining his sentence, citing *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010), and *United States v. Jenkins*, 854 F.3d 181 (2d Cir. 2017). It is true that this Court has expressed concern about the child pornography Guideline—"an

5

eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results," *Dorvee*, 616 F.3d at 188—but the sentence imposed in this case is hardly comparable to the shockingly high sentences imposed in *Dorvee* and *Jenkins*. In *Dorvee*, the district court imposed the statutory maximum of 240 months despite being presented with medical evidence that Dorvee was unlikely to initiate sexual conduct with a child, 616 F.3d at 183–84, and in *Jenkins*, the district court imposed 225 months even though Jenkins never produced or distributed child pornography or harmed a child, 854 F.3d at 190–91.

DiMartino also emphasizes the presence of mitigating factors in his case. The District Court gave due consideration, however, to DiMartino's vulnerability relative to other prisoners, his admission of guilt, the burdens imposed by the Sex Offender Registration Act, and the evidence of DiMartino's good character and community service. The District Court did not exceed the bounds of its discretion in weighing those factors against the large quantity of child pornography that DiMartino possessed, DiMartino's violation of a condition of his release, and his efforts to obstruct justice.

We have considered DiMartino's remaining arguments and find them to be without merit. The judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

6