**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 19 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

STEVEN MILLS,

      Defendant - Appellant.

No. 98-1378

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 97-CR-346-D)**

---

**Submitted on the briefs:**    *

Michael G. Katz, Federal Public Defender, and Jenine Jensen, Assistant Federal Public Defender, Denver, Colorado.

Jessica Dunsay Silver and Louis E. Peraertz, Department of Justice, Washington, D.C.

---

Before **ANDERSON** , **KELLY** , and **BRISCOE** , Circuit Judges.

---

    *After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**ANDERSON** , Circuit Judge.

_____

Following a jury trial, Stephen S. Mills was convicted of depriving a federal prisoner of his Eighth Amendment right to be free from cruel and unusual punishment, in violation of 18 U.S.C. § 242.  On appeal, Mills contends the district court erred by:  (1) admitting a videotape as evidence; (2) refusing to permit certain sidebar conferences and overruling certain objections as untimely; and (3) increasing his sentence for obstruction of justice.  Mills also contends that he received ineffective assistance of counsel due to his counsel's failure to move for a downward departure based on Mills' former status as a corrections officer. We affirm.

## BACKGROUND

According to the trial testimony, on February 15, 1996, at the United States Penitentiary in Florence, Colorado, various official escort teams were moving inmates from their cells to a conference room in order to conduct individual interviews about an inmate stabbing which had occurred the previous day.  As part of the warden's program to curtail a problem with prison guards beating inmates, each escort team was required to designate a team member to videotape

the inmate escort. At that time, Mills was employed as an inmate counselor at the penitentiary.

A team of four correctional officers was assigned to escort inmates from the Delta A unit, with the most junior officer designated to videotape the escorts. When the escort team approached the cell of inmate Fred Davis, Mills was already in the cell speaking to Davis. The junior officer began taping as Davis was ordered to "cuff-up" for the move. When Davis did not comply, a brief fight ensued, during which the three senior members of the escort team entered the cell, restrained Davis facedown on the floor, and handcuffed him with his hands behind his back. As soon as Davis was handcuffed, Mills assaulted him—first by jumping on Davis' head and shoulder area, and then by beating Davis with his fists. Meanwhile, concerned that the inmate had not arrived for the interview, the unit manager approached the cell to check on the transfer. When he observed Mills beating Davis, he ordered him to stop, and he ordered the escort team to take Davis to the hospital. The escort team then pulled Davis up and moved him out of the cell.

Mills was subsequently charged with acting under color of law to willfully deprive Davis of his Eighth Amendment rights and causing bodily injury, in violation of 18 U.S.C. § 242. At trial, two of the senior escort team members, as well as the junior officer in charge of taping, testified that they witnessed Mills

beating Davis after Davis was restrained on the floor, handcuffed, and no longer posed any threat. R. Vol. V at 210-13, 262-64; R. Vol. VIII at 331. The unit manager also testified that he witnessed Mills beating Davis under the same circumstances. R. Vol. VIII at 299-301. The fourth escort team member claimed his back was turned during the critical period, and therefore he did not see the complained-of assault. Id. at 426, 430, 439, 451. The videotape was admitted into evidence, although it did not show the assault. Instead, the tape showed only the initial arrival at the cell and the subsequent escort down the hall from the cell with Davis handcuffed. The digital time designation which appeared on the tape displayed a time gap between the recorded arrival and the exit down the hall, indicating a five minute interval for which no recorded images existed.

The junior officer testified that the camera had been working properly, and that he had accurately recorded the entire assault. However, immediately after the incident, as the other team members were moving down the hall, Mills ordered him to hand over the camera. R. Vol. V at 218. Although the officer denied knowing exactly what Mills did when he took the camera, two other officers heard Mills say that he was rewinding the tape, and another escort team officer admitted that Mills later said he rewound the tape to do away with the kicking. R. Vol. VIII at 345, 357, 452-53. After rewinding the tape, Mills returned the camera to the junior officer and told him to begin filming again from that point.

-4-

The officer complied by filming the escort down the hall. Later in the day, Mills again approached the junior officer, and advised him that, if he should ever encounter a similar situation, he should not accurately film the event. R. Vol. V at 226. At trial, the junior officer identified the admitted videotape as the one which he recorded, although he noted that the beating incident had apparently been recorded over.

## DISCUSSION

### A. Admission of the Videotape

Mills contends that the district court erred by admitting the videotape into evidence. We review the trial court's admission of evidence for abuse of discretion. United States v. Green, 175 F.3d 822, 833 (10th Cir. 1999).

When proffered evidence has distinctive characteristics which make it unique, readily identifiable, and relatively resistant to change, its foundation for admission may be established by testimony that the evidence is what its proponent claims it to be. Fed. R. Evid. 901; United States v. Johnson, 977 F.2d 1360, 1367 (10th Cir. 1992); United States v. Cardenas, 864 F.2d 1528, 1531 (10th Cir. 1989); see also United States v. McIntyre, 836 F.2d 467, 470 (10th Cir. 1987) (noting the proper admissibility of an audiotape "where a witness who heard the statements also testifies and the recording gives independent support to his

testimony"). In this case, the officer responsible for filming the escort testified as to the authenticity of the tape, and he confirmed that, except for the deleted portion, it accurately depicted the entire episode. Moreover, the independent date and time information which appears on the tape provides further indication of the tape's reliability.

Nonetheless, Mills argues the tape should not have been admitted because no chain of custody was established, and because it had clearly been tampered with. In response, the government readily concedes that a portion of the tape had been recorded over. However, it correctly notes that the resulting deletion did not affect the accuracy of the remaining images, including the clear indication that some of the event was missing. Therefore, except for the obvious deletion, the evidence is "readily identifiable," "with sufficient completeness to render it improbable that the original item has either been exchanged with another or been contaminated or tampered with." Cardenas , 864 F.2d at 1531. In such

circumstances, the proponent need not establish chain of custody. [1] Id.

Accordingly, we find no error in the district court's admission of the videotape.

### B. Rulings on Requested Sidebars and Objections

Mills next complains about the district court's refusal to conduct four requested sidebars, and he also contends that the court's announcement of an automatic no sidebar rule constitutes a clear abuse of discretion.

We review the district court's control of its trial proceedings for abuse of discretion. United States v. Hanif, 1 F.3d 998, 1002 (10th Cir. 1993). Under this deferential standard, we will not overturn the district court's directions regarding the presentation of evidence absent a manifest injustice to the parties. Strickland Tower Maintenance, Inc. v. AT & T Communications, Inc., 128 F.3d 1422, 1430 (10th Cir. 1997) (finding no abuse of discretion in the court's decision to time-limit the presentation of evidence in the interest of judicial administration).

---

[1]Moreover, "[f]laws in the chain of custody go to the weight of the evidence, but will not preclude admissibility." United States v. Washington, 11 F.3d 1510, 1514 (10th Cir. 1993). Thus, Mills' argument, that a chain of custody was necessary to prove that it was he who tampered with the tape, simply does not go to admissibility in the first instance. Furthermore, the bald assertion that others might have been responsible for the deletion ignores the overwhelming, uncontradicted evidence that Mills deliberately rewound the tape so that the beating would be recorded over.

Notably, each of the four refusals to hold a sidebar which Mills criticizes

relates to  government  requests following the court's overruling of      government

objections.  Despite the fact that these rulings ostensibly favored his defense,

Mills nonetheless contends that the court's actions actually caused a manifest

injustice to him.  Thus, he argues that the government's requests for sidebars,

which contained references to prior     in limine  proceedings, suggested inadmissible

evidence to the jury.  In particular, Mills decries the possibility that the denied

requests might have suggested his counsel was either incompetent or unethical.

Given the court's favorable treatment vis à vis Mills in these instances, we

disagree.  Additionally, we disagree with Mills' interpretation that one of the

court's statements constituted an absolute bar to sidebars.      [2]  Accordingly, we

---

[2]At the beginning of the third and final day of trial, counsel were meeting with the court to go over instructions.  Prior to calling in the jury and resuming with the defense's presentation of its last witness, the court asked the parties if they had any matters to discuss before continuing:

> The reason I'm saying this firmly is I don't like to interrupt jury trials, so if you know of something you might raise, of a[n] evidentiary issue, out of the routine, I'm not talking about objections, raise them now and don't ask for any sidebars because I'm not going to accommodate you; we're going to finish this trial without interruptions unless something comes up out of the ordinary.

R. Vol. XI at 477.  A clear reading of the court's statement indicates its reasonable desire to have the parties present their cases in an orderly fashion. Moreover, the court's direction explicitly provides for its contemporaneous hearing of any unanticipated, extraordinary requests.

conclude that the court properly exercised its discretion to control the trial without "needless consumption of time." See Fed. R. Evid. 611(a); Strickland Tower Maintenance , 128 F.3d at 1430.

Mills also claims the district court improperly overruled objections on four occasions. As to the two rulings which involve Mills' own objections, [3] the objections came immediately after the witness responded, and the court overruled both as untimely.

We will uphold the district court's rulings on properly made objections unless the court abused its discretion, and caused "manifest injustice to the parties." Angelo v. Armstrong World Indus., Inc. , 11 F.3d 957, 960 (10th Cir 1993) ( quoting Comcoa, Inc. v. NEC Tel., Inc. , 931 F.2d 655, 663 (10th Cir. 1991)). That is, under Fed. R. Evid. 103(a), "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." When objections are not timely made, we review only for plain error. See Angelo , 11 F.3d at 960. As a threshold matter, we note that our standard of review is governed by the determination of whether or not the objections were in fact timely. However, in this case, we would reach the same

---

[3]We note that the first two rulings about which Mills complains concern objections made by the government. Since Mills' substantial rights could not have been affected by the court's allowing him to present evidence over the government's objection, we do not address those rulings. See discussion infra.

conclusion under either standard. Therefore, we assume, without deciding, that the objections were timely, and that they properly preserved the issue for appeal under an abuse of discretion standard.

Of the two defense objections, the first was a hearsay objection; the second appears to be based on a lack of foundation. In the first instance, the witness initially claimed that Mills had not made a certain statement directly to him. [4] Immediately after the court overruled Mills' hearsay objection, the government referred the witness to his earlier grand jury testimony. R. Vol. VIII at 431-32. According to the transcript of the grand jury proceedings, the witness had previously testified that Mills had told him the video made him look like he was bouncing on a trampoline. In response to the grand jury transcript, the witness

---

[4]Mills made his hearsay objection during the government's cross-examination of Officer Jesse Weiser, in the following context:

Q. In fact, he [Mills] told you that when he looked at what he did on the video camera, it looked like someone bounce bouncing on a trampoline?

A. He didn't tell me that, sir. No, sir. He told Barker that who told me that. That was during a phone conversation in the gym.

DEFENSE COUNSEL: Your Honor, I object, hearsay.

THE COURT: Overruled. Overruled. The objection is after the witness has already uttered the answer. That's why.

R. Vol. VIII at 431.

admitted that he had told the truth in his grand jury testimony, and that his memory of the relevant conversations was probably better at the time of the earlier testimony.    Id. at 433-34.  Moreover, in subsequent redirect, defense counsel incorporated Mills' statement to the witness, again casting it as a direct rather than a hearsay statement.    Id. at 457.  Accordingly, as both the witness and defense counsel conceded that Mills made the statement directly to the witness, we find no error in the court's admitting it over Mills' hearsay objection.

Mills also complains that the court erred in overruling his objection to a question concerning a witness's knowledge as to whether the assault was videotaped. [5]  Significantly, Mills' objection came after several questions and answers had fully established that the witness, as the senior correctional officer

---

[5]Again, the objection occurred during the government's cross-examination of Officer Weiser:

Q.  And as far as you know, the incident was videotaped, correct?

A.  Yes, sir.

DEFENSE COUNSEL:  Your Honor.  I was going to object that he has no knowledge of the actual workings of the camera.  He was not running the camera at the time.  He doesn't know whether it was taping or not.

THE COURT:  The witness has already answered.  Objection overruled.

R. Vol. VIII at 444.

on the escort team, took personal responsibility to make sure that the Davis transfer was filmed. Id. at 404 ("I motioned to [the junior officer] to make sure he filmed the event."). Additionally, the witness testified regarding his familiarity with the filming, including his having instructed the junior officer in operating the camera. Id. at 442. The witness also testified that he was involved in testing the camera and in making sure the battery they used was properly charged. Id. at 444. Furthermore, the witness's testimony regarding the assault clearly indicates that, to his knowledge, the camera was working, since even before the unit manager arrived, he twice advised Mills to cease hitting Davis, saying, "Quit it, there's a camera," and "Quit it, Mills, there's a damn camera up there." Id. at 439-41. Finally, the witness testified that Mills later informed him that the assault had been recorded, and that it showed Mills jumping on or kicking Davis. Id. at 453. Under the circumstances, the government had established a proper foundation for the witness's knowledge, and the evidence was therefore admissible.

### C. Enhancement for Obstruction of Justice

As his third claim of error, Mills contends that the district court erred by increasing his sentence for obstruction of justice under U.S.S.G. § 3C1.1. Mills claims that the court erred because: (1) the government never proved that Mills

was responsible for destroying the video record of the assault; and 2) the destruction occurred prior to any investigation.

Sentencing Guideline § 3C1.1 instructs the district court to increase the offense level by two levels, if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation . . . of the instant offense of conviction, and . . . the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct." According to the commentary, the enhancement applies to "destroying or concealing . . . evidence that is material to an official investigation." See U.S.S.G. § 3C1.1 comment. (n.4(d)) (formerly designated as n.3(d), renumbered as 4(d) by Guideline amendment 581, effective Nov. 1, 1998).

We have already detailed the compelling evidence that Mills tampered with the videotape so as to erase the recorded assault. Inasmuch as the facts necessary to support an obstruction of justice enhancement need be proven only by a preponderance of the evidence, see United States v. Pelliere, 57 F.3d 936, 938 (10th Cir. 1995), we find no merit in Mills' assertion that the evidence was insufficient to support the sentencing court's finding.

Mills also argues that the tape's destruction occurred prior to the investigation, and therefore does not trigger the enhancement. "As a threshold limitation, § 3C1.1 requires a nexus between the allegedly obstructive conduct

and the instant offense." United States v. Norman, 129 F.3d 1393, 1399 (10th Cir. 1997). "Obstructive conduct undertaken prior to an investigation, . . . prior to any indication of an impending investigation, . . . or as regards a completely unrelated offense, does not fulfill this nexus requirement." United States v. Gacnik, 50 F.3d 848, 852 (10th Cir. 1995). In this case, the very purpose of taping was to assist the warden in his official program to curtail unlawful beatings. Clearly, Mills knew that an investigation would be conducted, and he understood the importance of the tape in that investigation. We have previously held such awareness of an impending investigation is sufficient to satisfy the nexus requirement so as to warrant enhancement. [6] Norman, 129 F.3d at 1399. Accordingly, the court did not err in applying the enhancement.

### D. Ineffective Assistance of Counsel

As his final claim, Mills argues that his counsel was ineffective. Although he recognizes our general policy against hearing such arguments on direct appeal, see United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995), he argues

---

[6]We observe that Note 4(d) excepts conduct which occurs contemporaneously with arrest, such as swallowing or throwing away a controlled substance. U.S.S.G. § 3C1.1, comment. (n.4(d)). Mills does not argue that his actions were contemporaneous with arrest, nor do the facts support such an argument. Therefore, we need not consider whether the destruction of official documentation of a crime would be properly subject to such an exception.

that his is the rare case that needs no further factual development. Appellant's Br. at 29 (citing Galloway, 56 F.3d at 1242). We disagree.

At sentencing, Mills' trial counsel argued for a departure based upon the facts that (1) prior to his assault on Davis, a prison gang had put a contract out on Mills' life; [7] (2) Mills had been suffering from severe depression at the time he assaulted Davis; (3) Mills had an otherwise unblemished work record; and (4) Mills was the sole caretaker of elderly, sick parents. R. Vol. XIII at 22-23. On appeal, Mills claims that his counsel was ineffective because his cited factors failed to call the court's attention to Koon v. United States, 518 U.S. 81 (1996), and Mills' status as a former corrections officer. [8]

Notably, in Koon, the district court's decision to depart was based on a unique combination of factors. On certiorari, the Supreme Court found that the district court had discretion to consider both the fact that the emotional outrage produced by "[t]he extraordinary notoriety and national media coverage of this case, coupled with the defendants' status as police officers," made the defendants particularly susceptible to prison abuse, and the fact that "federal conviction

[7]The record contains no evidence supporting counsel's statement of this fact.

[8]We note that the probation officer had already advised the court of the possibility of a departure based upon aberration of the defendant's normal conduct and the defendant's history, provided that the court found those factors sufficient to "meet the elements outlined by the Supreme Court" in Koon v. United States. Presentence Investigation Report, R. Vol. XV at Part E, ¶ 71.

following a state acquittal based on the same underlying conduct . . . significantly burden[ed] the defendants." [9] Koon, 518 U.S. at 112 (alteration in original) (quoting United States v. Koon, 833 F. Supp. 769, 785-786, 788, 790 (C.D. Cal. 1993)). Thus, the Court approved the district court's consideration of those factors as outside the heartland for § 242 offenses. Id.

By contrast, the record before us indicates that Mills' counsel also argued for departure based on a combination of factors, but the district court found "no reason to depart." R. Vol. XIII at 36. However, the court did impose the lowest possible sentence in the applicable range. Moreover, it "strongly recommend[ed]" that Mills be incarcerated in a state, rather than a federal, facility in order to lessen the potential that inmates would seek revenge against "a former correction official who has been convicted of beating a prisoner." Id. at 36-39.

Mills argues that the court's concern clearly indicates it would have departed if his counsel had argued the elements which the Supreme Court approved in Koon and his status as a corrections official. We disagree. On this record, we simply cannot determine whether a more specific defense reference to

[9]The district court specifically noted that it would be hesitant to depart based solely upon vulnerability to prison abuse. However, it determined that factor, in combination with the multiple adversarial proceedings, was sufficient to warrant departure. See Koon, 518 U.S. at 113-14 (noting the district court's reliance on the combination of factors (which appears in the district court's opinion, United States v. Koon, 833 F. Supp. 769, 888-89 (C.D. Cal. 1993))).

Koon would have altered the district court's decision. See Strickland v. Washington , 466 U. S. 668, 688 (1984) (requiring a finding that counsel's performance was deficient and that the defendant was prejudiced thereby). Accordingly, we decline to review Mills' ineffectiveness claim in this direct appeal.

AFFIRMED.