FILED
United States Court of Appeals
Tenth Circuit

October 31, 2007

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ELSA CONTRERAS, a/k/a Elsa
Juaregui, a/k/a Elisa Juarequi, a/k/a
Elsa Taurequi,

      Defendant-Appellant.

No. 06-4144

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 2:04-CR-00716-DKW)**

---

Submitted on the briefs:

Roger K. Scowcroft, Salt Lake City, Utah for the Defendant-Appellant.

Stephen J. Sorenson, Assistant United States Attorney (Brett L. Tolman, United States Attorney, with him on the briefs), Salt Lake City, Utah for the Plaintiff-Appellee.

---

Before **McCONNELL**, **TYMKOVICH**, and **BALDOCK**, Circuit Judges.[*]

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**McCONNELL**, Circuit Judge.

This case considers a matter of first impression for this circuit: whether the Sentencing Guidelines enhancement for obstruction of justice, United States Sentencing Guidelines Manual § 3C1.1 (2002), applies when a defendant's obstructive conduct occurred during the prosecution of state charges preceding the federal indictment, but both federal and state charges were based on the same underlying conduct. We hold that, in this case, it does. We also hold that the search of Ms. Contreras's car did not violate her constitutional rights. Accordingly, we affirm both the conviction and the sentence.

## I. Background

On October 2, 2004, Elsa Contreras was stopped on Interstate 15 in Beaver County, Utah, for following the car ahead of her too closely. The officer, Sergeant Bauer, observed that Ms. Contreras was pale and "shaking very badly." R. Vol. II, at 14. While he was examining Ms. Contreras's license and rental car agreement, he asked about her travel plans. She said that she had left Nebraska on September 30 and driven to Las Vegas to visit a brother and a relative who had traveled there from Mexico. Although both the officer's testimony and the district court order state that Ms. Contreras told the officer that she arrived in Las Vegas on the morning of October 2, that statement is unsupported by the videotape of the encounter. Instead, the recording reflects that Ms. Contreras told

the officer only that she had left Nebraska on September 30, driven to Las Vegas, and was now, two days later, on her way back to Nebraska. She explained to the officer that she did not like to fly. The location of the traffic stop was about a three-hour drive from Las Vegas.

Sergeant Bauer told the defendant that he was not going to give her a ticket and to "drive safe." R. Supp. Vol. I, at 4. Then, still standing at her car window, he asked, "You wouldn't mind opening your trunk real quick before I let you go, would you?" *Id*. The defendant agreed, and the officer opened the trunk and began to search. He noticed that the spare tire was not sitting properly in its well and asked Ms. Contreras if he could check it. She agreed. Further inspection revealed that the tire contained something other than air. Through a series of negotiations, Sergeant Bauer convinced Ms. Contreras, however reluctantly, to accompany him to a service station to check the tire. At the service center, the officer broke down the tire and found seven packages of methamphetamine.

Ms. Contreras was arraigned on state charges and held at the Beaver County Jail for five days. She was released on bond on October 7, after which she fled to Mexico. The federal government indicted her on October 20, 2004, on one count of possessing 500 grams or more of methamphetamine with an intent to distribute, a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2. The following day, a federal warrant was issued for her arrest. No testimony or evidence indicates that the federal government took any additional action to

-3-

investigate the crime or to bring Ms. Contreras into custody, other than the issuance of the indictment and arrest warrant.

In November, the state court issued a warrant for failure to appear when Ms. Contreras missed a court date. Eight months later, in July 2005, she was stopped crossing the border, the federal warrant was discovered, and she was arrested and placed in federal custody. On March 20, 2006, Ms. Contreras pleaded guilty to violating §§ 841(a)(1) and (b)(1)(A), preserving her right to appeal.

The Presentence Report (PSR) recommended a sentencing enhancement under United States Sentencing Guidelines § 3C1.1 for obstruction of justice. As a basis for the enhancement, the PSR cites Ms. Contreras's failure to appear at her state-court hearing. The PSR calculated a total offense level of 25 and a criminal history category of I, resulting in a sentencing range of 57-71 months. Without the enhancement for obstruction of justice, the range would have been 46-57 months.

At sentencing, the government voiced its support for the enhancement:

Well, just for the record, Your Honor, I do believe that the issue here is that she was arrested and charged in this offense and it is irrelevant which sovereign pursued the investigation. She fled following her arrest and following a charge being filed in this instant offense. Under the guidelines, I do believe that that does qualify for obstruction of justice. . . .

The Court: I agree with you on that point.

R. Vol. III, at 8-9.

-4-

The judge sentenced Ms. Contreras to 57 months, the bottom of the sentencing range.

Ms. Contreras timely appealed, objecting both to the search of her trunk and to the sentencing enhancement.

## II. Fourth Amendment

Ms. Contreras argues on appeal that the search of the trunk of her car was illegal because her detention was not based on reasonable suspicion and her consent to the search was tainted. We find that the officer had reasonable suspicion to detain Ms. Contreras, and that she freely and voluntarily consented to the search of her trunk.

In reviewing the denial of a motion to suppress, we accept the factual findings of the district court unless they are clearly erroneous. *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998). The ultimate determination of reasonableness under the Fourth Amendment is a question of law, which we review *de novo. Id.*

*A. Initial Traffic Stop*

"[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring . . . ." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995). Utah law at the time of the stop at issue prohibited following "another vehicle more closely

than is reasonable and prudent." Utah Code Ann. § 41-6-62 (2000) (current version at Utah Code Ann. § 41-6a-711 (2005)). The district court accepted Sergeant Bauer's testimony that he stopped Contreras because she was following a semi-truck too closely. Ms. Contreras does not challenge that finding on appeal, nor does she challenge the district court's holding that the stop was valid. Therefore, we turn to the validity of the extended stop following Sergeant Bauer's initial detention of Ms. Contreras.

*B. Extension of Stop*

Once an officer has returned the motorist's license and other papers and issued any citation he intends to give, he must usually allow her to proceed on her way without additional questioning. *United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999). Further detention must be justified by an "objectively reasonable and articulable" suspicion of illegal activity based on the totality of the circumstances. *United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir. 2001). We affirm the district court's conclusion that Sergeant Bauer's detention of Ms. Contreras beyond the scope of the initial traffic stop was supported by reasonable suspicion.

Sergeant Bauer's testimony paints a convincing picture of reasonable suspicion. The officer reported that the defendant was shaking so badly that she could not hold on to the papers in her hand. More importantly, she offered an account of her travel plans that seemed suspicious at best and incredible at worst.

-6-

Ms. Contreras claimed to have driven more than 1,200 miles to see her family, only to turn around within a day and begin the 1,200-mile drive back. Add the presence of food wrappers from a California restaurant and the fact that she was driving a rental car – which Sergeant Bauer knew to be "often used by narcotics traffickers . . . [because] it can't be seized," R. Vol. II, at 21 – and Ms. Contreras's conduct begins to strongly resemble that of a narcotics courier transporting a load between the West Coast and Nebraska.

We have noted numerous times that implausible travel plans can form a basis for reasonable suspicion. *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1260 (10th Cir. 2006); *United States v. Kopp*, 45 F.3d 1450, 1453-54 (10th Cir. 1995). We have also credited the idea that drug couriers often use third-party rental cars. *Williams*, 271 F.3d at 1270. Although we have found nervousness to be "of only limited significance in determining whether reasonable suspicion exist[s]," *United States v. Wood*, 106 F.3d 942, 948 (10th Cir. 1997), it does add to the overall calculus of suspicious behavior, especially when, as here, it is extreme. Taken as a whole, Sergeant Bauer's assessment that Ms. Contreras's actions created reasonable suspicion of narcotics activity is more than sufficient.

*C. Consent Given to Search Trunk*

While a warrant is not required to search a motor vehicle, "the search otherwise [must be such] as [a] magistrate could authorize." *California v. Carney*, 471 U.S. 386, 394 (1985). In other words, an officer must have probable

cause to search a vehicle without a warrant or he must rely on some other exception to the warrant requirement.[1]  Consent is one such exception to the warrant requirement.  *United States v. Zubia-Melendez*, 263 F.3d 1155, 1162 (10th Cir. 2001) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).

The central question in determining whether consent to a search is voluntary is "whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' request . . . ."  *Florida v. Bostick*, 501 U.S. 429, 439 (1991); *United States v. Rosborough*, 366 F.3d 1145, 1149 (10th Cir. 2004).  In this case, there is ambiguity as to whether Ms. Contreras's detention had ceased at the time she consented to the search.  On the one hand, Sergeant Bauer had returned her documents and told her to "drive safe," which would ordinarily be an indication that she was free to go. R. Supp. Vol. I, at 4.  On the other hand, after Ms. Contreras said "okay" to these valedictory remarks, the officer stepped back briefly and asked her: "You wouldn't mind opening your trunk real quick before I let you go, would you?"  *Id*. We interpret this as indicating that she was not yet free to go, or at least that a reasonable motorist might interpret the words "before I let you go" as countermanding the dismissal implied by the earlier words, "drive safe."  Yet the

---

[1]The district court in its order and both parties in their appellate briefs addressed the search issue in terms of reasonable suspicion rather than probable cause, but we assume they must have meant the latter.  Because we resolve the search issue on the basis of consent, any error that may have occurred in this respect is inconsequential.

videotape suggests that Ms. Contreras may have interjected her consent before Sergeant Bauer had reached the end of his sentence—before he uttered the words, "before I let you go." If so, then at the time she gave her consent, she had been released from custody and the officer had not yet communicated anything to the contrary.

The videotape, however, is not entirely audible because Sergeant Bauer and Ms. Contreras were talking at the same time. It is not clear what exactly Ms. Contreras said and whether her interjection was a consent, or if she gave her consent only after Sergeant Bauer had finished speaking. However, the timing of her consent is not decisive. A person may voluntarily consent to a search even while being legally detained. *United States v. Flores*, 48 3d. 467, 468-69 (10th Cir. 1995). The detention is only one factor to be considered in determining whether consent was voluntarily and freely given based on the totality of the circumstances. *United States v. Nicholson*, 983 F.2d 983, 988 (10th Cir. 1993).

On this record, even assuming that Ms. Contreras was still under lawful detention at the time, we agree with the district court that her consent to the search was voluntary. Factors that support this conclusion include: (1) Sergeant Bauer's casual phrasing of the request; (2) his tone of voice; (3) his lack of a show of force; (4) his stop in broad daylight on an interstate highway; and (5) Ms. Contreras's repeated responses of "okay" when the officer reiterated his requests

for consent. Nothing in the videotape or the testimony at the hearing provides any reason to believe that Ms. Contreras was acting under compulsion.

Ms. Contreras also contends that even if she consented to the opening of her trunk, she did not consent to a search of it. The general rule is that "when a suspect does not limit the scope of a search, and does not object when the search exceeds what he later claims was a more limited consent, an officer is justified in searching the entire vehicle." *United States v. West*, 219 F.3d 1171, 1177 (internal quotations and citations omitted). The court determines from the totality of the circumstances whether a search remains within the boundaries of the consent, viewing the evidence in the light most favorable to the government. We ask, "[W]hat would the typical reasonable person have understood by the exchange between the officer and the suspect?" *United States v. Wald*, 216 F.3d 1222, 1228 (10th Cir. 2000) (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)).

We agree with the district court that a reasonable person granting consent to open the trunk would have expected that Sergeant Bauer intended to inspect the interior of the trunk, not just the trunk's hinges. Once properly in the trunk, the officer quickly developed probable cause to believe the spare tire contained contraband. In any event, Sergeant Bauer returned twice to Ms. Contreras and obtained further permission when he wished to examine the spare tire after he noticed that it did not fit comfortably under its cover.

-10-

Because we find Ms. Contreras voluntarily consented to the search of her trunk and the extension of the stop was based on reasonable suspicion, there was no Fourth Amendment violation. We uphold the district court's denial of Ms. Contreras's motion to suppress.

### III. Obstruction of Justice

*A. Obstruction of State-Court Charges*

"[W]e review a district court's factual findings for clear error, and we review its legal interpretation of the guidelines de novo." *United States v. Norman*, 129 F.3d 1393, 1398 (10th Cir. 1997).

Section 3C1.1 of the Sentencing Guidelines requires that an offender's offense level be increased by two levels

> [i]f (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense. . . .

U.S.S.G. § 3C1.1. The defendant in this case asserts that her conduct occurred before the investigation or prosecution of the "instant offense of conviction" was underway. We disagree.

The Guidelines direct that "[t]he term 'instant' is used in connection with 'offense,' 'federal offense,' or 'offense of conviction,' as the case may be, to distinguish the violation for which the defendant is being sentenced from a prior

or subsequent offense, or from an offense before another court *(e.g., an offense before a state court involving the same underlying conduct)*." U.S.S.G. § 1B1.1 cmt. n.1(H) (emphasis added). Thus, if Ms. Contreras's flight to Mexico had affected only state prosecution, it would not count for purposes of § 3C1.1.

In this case, however, Ms. Contreras committed an offense that could have been prosecuted either by state or by federal authorities. When she fled to Mexico, she did not know whether the prosecution she was obstructing was one that eventually would proceed in federal court or in state court. Indeed, the record is not clear whether, at the time she fled to Mexico, the federal indictment had yet been entered. She fled sometime after October 7, 2004; the federal grand jury indicted her on October 20. There is no doubt, however, that her five-month absence precluded federal authorities from proceeding with prosecution in her case until she returned to the jurisdiction. Thus, although we agree with defendant's argument that the language of the guideline confines the obstruction enhancement to obstruction of the administration of justice with respect to the "instant" offense, meaning the federal prosecution, we hold that where a defendant's obstructive conduct impedes or delays prosecution by both federal and state authorities, the enhancement is applicable.

Even if Ms. Contreras slipped across the border before the grand jury did its work, this would not make her flight any less obstructive with respect to the federal prosecution. In *United States v. Mills*, this Court upheld the application of

-12-

the obstruction enhancement to a defendant—a federal prisoner—who tampered with videotape evidence to erase the record of his conduct. 194 F.3d 1108, 1114-15 (10th Cir. 1999). We held that the defendant's action obstructed the federal investigation even though it took place before the start of that investigation. "Clearly, Mills knew that an investigation would be conducted, and he understood the importance of the tape in that investigation." *Id*. at 1115. If conduct may obstruct a federal prosecution when no investigation is underway at all, it surely must be permissible for the obstruction enhancement to apply here, where a defendant flees the country after state investigators had uncovered evidence that would warrant federal prosecution.

A contrary interpretation would have strange consequences. Many, if not most, federal drug prosecutions occur as a result of state investigations. *See, e.g.* Paul G. Cassell, *Too Severe?*, 56 Stan. L. Rev. 1017, 1040 (2004) (noting "the increasing trend by federal prosecutors to 'adopt' what is essentially a state investigation for federal prosecution"). It would make little sense to determine the applicability of the guideline by the identity of the officers who conduct the initial investigation rather than the nature of the ultimate prosecution. As the Fourth Circuit has noted: "The failure of the guideline to distinguish between an investigation by federal officials as opposed to state officials undoubtedly is founded in a recognition that state officers are authorized to and frequently do

investigate criminal conduct that ultimately is prosecuted under federal law."
*United States v. Self*, 132 F.3d 1039, 1042-43 (4th Cir. 1997).

Seven other circuits have considered whether the obstruction of a state investigation based on the same facts as the eventual federal conviction merits a § 3C1.1 enhancement. Of those circuits, six have held that obstruction of the state proceeding does qualify for the enhancement; only one held that it did not. *United States v. Perez*, 50 F.3d 396, 398-400 (7th Cir. 1995) (obstruction of state proceeding does not qualify under the enhancement); *United States v. Ayers*, 416 F.3d 131, 134 (2d Cir. 2005) (obstruction of state proceeding qualifies under the enhancement); *United States v. Frasier*, 381 F.3d 1097, 1099-1100 (11th Cir. 2004) (same); *United States v. Roberts*, 243 F.3d 235, 237-38 (6th Cir. 2001) (same); *United States v. Imenec*, 193 F.3d 206, 209 (3d Cir. 1999) (same); *United States v. Self*, 132 F.3d 1039, 1042-43 (4th Cir. 1997) (same)*; United States v. Adediran*, 26 F.3d 61, 65 (8th Cir. 1994) (same); *United States v. Emery*, 991 F.2d 907, 911-12 (1st Cir. 1993) (same).

## IV. Conclusion

Accordingly, we **AFFIRM** Ms. Contreras's conviction and her sentence.