**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 23, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DANIEL BELTRAN-DIAZ,

Defendant-Appellant.

No. 09-4027

(D. of Utah)

(D.C. No. 2:07-CR-253-DB-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, **HOLMES**, Circuit Judges, and **POLLAK**[**], District Judge.

---

Daniel Beltran-Diaz appeals the district court's denial of his Motion to Suppress Evidence. He argues the district court erred in concluding that a police officer had a reasonable suspicion of criminal activity sufficient to justify his brief detention after a routine traffic stop. We see no clear error in the district court's findings of fact, and the district court correctly determined that a

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

reasonable police officer, in light of the totality of the circumstances, would have reasonable suspicion of criminal activity sufficient to justify the detention.

Having jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM the district court's ruling.

## I. Factual Background

The following relevant facts are undisputed. On March 12, 2007, Officer Nick Bowles of the Utah Highway Patrol noticed a white pick-up truck traveling east on I-70, near Salina, Utah. The truck caught the officer's attention because, although a passenger vehicle, it had a commercial license plate. Officer Bowles requested dispatch to check the license plate number, but dispatch informed him that the number was not on file. The officer then pulled Beltran-Diaz over to perform a registration check.

Approaching Beltran-Diaz's truck, Officer Bowles smelled a strong scent of air freshener and observed a small piece of luggage in the back seat of the truck. He asked for Beltran-Diaz's identification, as well as the truck's registration. Beltran-Diaz provided a Mexican identification card with the name of Marcos Mejia. While Beltran-Diaz looked for his registration, Officer Bowles asked him about his travels, and, in broken English, Beltran-Diaz informed the officer he was traveling from Beachwood, California (a town near Reno) to Nebraska.

Officer Bowles found that claim odd since I-70 is not a direct link to Nebraska from Northern California, and I-80 is a substantially shorter route. That

oddity, coupled with the strong scent of air freshener and the small amount of luggage in the back seat, made Officer Bowles suspect that Beltran-Diaz might be involved in drug activity.

Several other events increased the officer's suspicion. First, after ensuring the registration for the car was valid, Officer Bowles walked with Beltran-Diaz to the rear of the truck so that he could point out the commercial license plate and explain why it did not come back on the computer check. On the way to the back of the truck, Officer Bowles spied a full gas can in the bed of the truck. In his experience, every time Officer Bowles had found someone stashing drugs in their gas tank (based on hundreds of previous arrests), he had also found a full gas can with the vehicle. The gas can thus added to his suspicions. The officer also noticed plastic wheel-well covers behind the tires, blocking his view of the undercarriage of the truck, an observation consistent with recent alterations to the vehicle.

After noticing these items, Officer Bowles asked Beltran-Diaz several more questions about his travel plans and learned he had been in California for five days and that he was returning to Nebraska. The story was inconsistent with the small amount of luggage Beltran-Diaz appeared to be carrying for the trip.

At this point, Officer Bowles thanked Beltran-Diaz, and the two men returned to their respective vehicles. On his way back to his patrol car, however, Officer Bowles noticed that the driver-side rear wheel-well cover was newer than

that on the passenger side. This was yet another signal to the officer that the vehicle had been recently altered and Beltran-Diaz may have been smuggling drugs in the gas tank.

Based on this information, Officer Bowles approached Beltran-Diaz from the passenger-side window and asked if he could take a closer look at the truck. Beltran-Diaz agreed and climbed back out of the cab. The officer looked underneath the gas tank and observed new straps securing the gas tank hoses, as well as evidence on those hoses that someone had recently removed the straps. Moreover, it appeared to Officer Bowles that someone had recently retooled the nuts.

By then, Officer Bowles concluded the vehicle likely carried drugs. Wanting to inspect the interior of the gas tank, Officer Bowles decided to seek Beltran-Diaz's consent for a search. To facilitate the request, given Beltran-Diaz's limited English, Officer Bowles radioed for a Spanish-speaking officer, and Officer Halliday arrived within minutes from the nearby town of Salina, Utah. Speaking through this new officer, Officer Bowles asked Beltran-Diaz for permission to look at the gas tank. Beltran-Diaz consented.

Officer Bowles then tried to look inside the tank with a fiber-optic scope, but a device on the mouth of the tank prevented him from doing so. The officers then asked for Beltran-Diaz's permission to take the truck into a garage where

they could inspect the tank more thoroughly. He agreed, and at the garage, the officers removed the tank to find six packages of cocaine hidden inside it.

## II. Procedural History

Beltran-Diaz filed his Motion to Suppress the evidence seized by Officer Bowles with the district court, who referred it to a magistrate judge. The magistrate judge issued a Report and Recommendation finding "that reasonable suspicion did not exist to detain Defendant for the entire length of the stop." R., Vol. 1, Doc. 38 at 4. The magistrate judge recommended that the district court grant the Motion to Suppress.

The district court, however, declined to adopt the magistrate judge's recommendation and instead denied Beltran-Diaz's motion, concluding that under the totality of the circumstances, Officer Bowles had a reasonable suspicion of criminal activity sufficient to justify further brief detention of Beltran-Diaz. Beltran-Diaz appeals that ruling.

## III. Analysis

### A. Standard of Review

We review the district court's findings of fact for clear error only. *United States v. Pikyavit*, 527 F.3d 1126, 1129 (10th Cir. 2008). We review *de novo* the district court's legal determination that the police officer had a reasonable suspicion of criminal activity sufficient to justify the encounter and detention. *United States v. Contreras*, 506 F.3d 1031, 1035 (10th Cir. 2007) ("The ultimate

determination of reasonableness under the Fourth Amendment is a question of law, which we review *de novo*.").  Lastly, we review the evidence "in the light most favorable to the prevailing party below—in this case, the government." *Pikyavit*, 527 F.3d at 1130.

## B.  Reasonable Suspicion

Neither party challenges the facts as the district court found them, and upon review of the record, we find no clear error in the district court's findings.  Thus, we are left only to answer whether the district court erred in concluding that Officer Bowles had a reasonable suspicion of criminal activity sufficient to justify the brief detention after the registration check.  We find no error.

As an initial matter, Beltran-Diaz does not contest the reasonableness of the traffic stop.  Rather, he focuses only on the length of the detention, arguing that Officer Bowles unreasonably extended the encounter after resolving the issue of the vehicle's registration.

Our cases make clear that after an officer finishes a routine traffic stop, a brief additional detention of the driver for reasons not related to the initial traffic stop is proper if (1) the driver provides consent, or (2) "the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring."  *United States v. Cervine*, 347 F.3d 865, 868–69 (10th Cir. 2003) (citations and quotations omitted).  To determine whether reasonable suspicion exists, we look to the "totality of the circumstances" in each case to see whether

the officer had a "particularized and objective basis" for suspecting legal wrongdoing. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). No one piece of evidence standing alone is dispositive. We consider all of the evidence together.

In this case, a number of facts observed during the encounter triggered Officer Bowles's suspicion of drug trafficking: the heavy scent of air freshener in the truck; the presence of only one small bag for a five-day cross-country road trip; the use of an indirect route on I-70 instead of the more direct I-80 route; the full gas can in the bed of the truck; and the wheel-well covers. Each of these factors, taken alone, might not provide an officer with a reasonable suspicion of criminal activity. But together, they suggest suspicious circumstances that justified the officer prolonging the encounter long enough to resolve his concerns. *See United States v. White*, 584 F.3d 935, 951–52 (10th Cir. 2009) (upholding a determination of reasonable suspicion because of the defendant's nervousness, bizarre travel plans, and past record); *United States v. Ledesma*, 447 F.3d 1307, 1318 (10th Cir. 2006) (finding that the inconsistency between a small amount of luggage and defendants' stated travel plans is a factor in a reasonable suspicion analysis)*; United States v. West*, 219 F.3d 1171, 1178–79 (10th Cir. 2000) (holding that the scent of air freshener is a proper factor in a reasonable suspicion analysis).

Even though Officer Bowles had sufficient reason to prolong the encounter at that point, he developed further facts that contributed to the reasonable

suspicion calculus. In particular, he noticed (1) the discrepancy between the driver-side wheel-well cover and the passenger-side wheel-well cover, suggesting the gas tank had been recently compromised, and (2) the underside of the gas tank had been manipulated, suggesting it had recently been removed or altered.[1]

The district court correctly concluded that throughout "the entire encounter, the officer was presented with more and more evidence to create reasonable suspicion, and justify a brief additional detention to allow the officer to attempt to allay his suspicions." R., Vol. 1, Doc. 38 at 8. We agree with the district court that by the time Officer Bowles asked Beltran-Diaz if he could take a closer look at the truck, he had more than enough facts to justify the detention. Following that closer look, the officer was further justified in detaining Beltran-Diaz long enough to bring a Spanish-speaking officer to seek consent to search the gas tank.

In sum, Officer Bowles had sufficient reasonable suspicion initially and throughout the encounter to briefly detain Beltran-Diaz and complete his investigation of the vehicle. Because we have concluded Officer Bowles had reasonable suspicion to detain Beltran-Diaz, we need not address his argument

---

[1] Beltran-Diaz contends that when the officer looked under the truck, he conducted an illegal search. We disagree. The "undercarriage is part of the car's exterior, and as such, is not afforded a reasonable expectation of privacy." *United States v. Rascon-Ortiz*, 994 F.2d 749, 754 (10th Cir. 1993). Further, there is "no legitimate expectation of privacy in a car's interior if an officer looks through the car's window and observes contraband in plain view." *Id.* Thus, no search occurred when the officer observed the travel bag or gas can.

that any consent he gave to search the interior of the gas tank was tainted by an illegal search.

## IV. Conclusion

The district court properly denied Beltran-Diaz's Motion to Suppress, and we AFFIRM that decision.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Circuit Judge